S. ASHAR AHMED, ESQ., CSB # 256711
**INFINITY LAW GROUP LLP**
1020 Aileen St.
Lafayette, CA 94549
Telephone:    925-799-2888
Facsimile:    415-426-3581
Email: aahmed@infinitylawca.com

ADAM S. HEDER, ESQ., CSB #270946
**HARRIS BERNE CHRISTENSEN LLP**
15350 SW Sequoia Parkway, Suite 250
Portland, OR 97224
Telephone: 503-968-1475
Facsimile: 503-968-2003
Email: adamh@hbclawyers.com

Attorneys for Plaintiff Sparrow Fund Management, LP

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPARROW FUND MANAGEMENT, LP,<br><br>Plaintiff,<br><br>v.<br><br>MIMEDX GROUP, INC.,<br><br>Defendants. | Civil Action No.: '21CV1615 LAB DEB<br><br>**PLAINTIFF'S MOTION TO ENFORCE OUT OF DISTRICT SUBPOENA FOR DOCUMENT PRODUCTION TO THIRD-PARTY AXOS FINANCIAL (FKA BOFI FEDERAL BANK); MOTION TO TRANSFSER VENUE; AND MOTION TO DISQUALIFY COUNSEL** |

### RULE 26.1 CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 26.1, counsel certifies that he has conferred with counsel for Axos Financial Inc. fka BOFI Federal Bank ("BOFI") and the parties have been unable to resolve their differences.

1

**SUMMARY**

This motion arises out of a case in the Southern District of New York, *Sparrow Fund Management, LP v. MiMedx Group, Inc.,* Case No. 18-cv-04921. In 2017, an anonymous blogger named Aurelius Value published online content purporting to expose accounting fraud and other suspicious activity at the publicly traded, biopharmaceutical company, MiMedx Group, Inc. Aurelius' allegations, as it turns out, were accurate. MiMedx subsequently restated years' worth of financial data; was delisted from the NASDAQ for a time; and came under investigation by multiple government agencies. Most importantly, MiMedx's former CEO, Parker "Pete" Petit, has been convicted of federal securities fraud. But before all of that was known, MiMedx initiated a very loud and very aggressive campaign against Aurelius Value, promising the public it would bring justice to the blogger, whom it accused of being a market manipulator. In early October 2017, MiMedx falsely, and without probable cause or any reasonable grounds and with absolute malice, accused Sparrow Fund Management, LP – a small startup investment fund – of being Aurelius. MiMedx knew it had sued the wrong entity, but it didn't care because it never mattered whether it got the right person. It wanted to make a statement to the investing public and coerce from a less resourceful entity all information it had on Aurelius.

Sparrow has learned through the course of extensive discovery that MiMedx first got the idea to sue Sparrow from Axos Financial (fka BofI Federal Bank) and its primary law firm Sheppard Mullin Richter & Hampton LLP. Against this backdrop, Sparrow files this motion to compel a subpoena duces tecum against third party Axos Financial. When MiMedx first began its unholy crusade against Aurelius, it learned that Axos that had also been the target of Aurelius' blogging and had, as a result, been hunting for him for approximately the prior 18 months, with Sheppard Mullin representing it in that effort. And so, when MiMedx decided to initiate its own search for Aurelius, it retained Sheppard Mullin as well. Sparrow and MiMedx have engaged in numerous discovery disputes in the underlying litigation, as the Court can imagine that discovery of MiMedx's prefiling investigation into Aurelius necessarily implicates numerous attorney conversations. Yet, by both putting at issue its (erroneous) conclusion that Sparrow was Aurelius and subsequently claiming in opposition to a Rule 11 motion for sanctions that it had engaged in

a robust prefiling investigation, MiMedx clearly waived any work product or privilege as it related to that prefiling investigation. As the Southern District of New York stated: "MiMedx has clearly waived privilege as it relates to all facts its investigators and attorneys collected as part of the pre and post-suit investigations, attorney-client communications relaying those facts, and attorney-client communications drawing factual conclusions based on the facts collected." (CM ECF No. 207, at p. 9).

But a significant component of that prefiling investigation consisted of the work product Sheppard Mullin/Axos had already conducted and shared with MiMedx before it filed its complaint against Sparrow. So Sparrow has subpoenaed Axos to produce those documents and communications that it shared with MiMedx about Aurelius, either directly through its "common interest agreement" or indirectly through its shared counsel Sheppard Mullin. Despite the court's clear ruling that MiMedx had waived the entirety of its prefiling (and post-filing) fact investigation, Axos has refused to produce any such documents.

Sparrow respectfully requests this Court order Axos to provide the following:

1. Produce all documents and communications related to Sparrow Fund Management, LP, or any of its principals, including communications with third parties and counsel it engaged to investigate Sparrow; and

2. Produce all documents and communications related to identifying Aurelius Value, including communications with third parties and counsel it engaged to investigate Aurelius; and

3. Allow both its own employees and those it retained, in this case Mintz Group and potentially others, to testify about what work was done on its behalf to discover Aurelius, and to testify about that work to the extent that work was shared with MiMedx.

The documents requested in items 1 and 2 above are already captured by the subpoena served on BOFI, a copy of which is attached hereto as Exhibit 1.

In addition, Sheppard Mullin attorneys are fact witnesses in the underlying lawsuit. Sheppard Mullin represented MiMedx and currently still represents Axos. Further, Sparrow has

brought a separate suit against Sheppard Mullin California state court for its role in facilitating the malicious prosecution. (*Sparrow Fund Management, LP v. Sheppard Mullin Richter & Hampton, LLP, et al.*, County of Los Angeles, Case No. 21STCV03686, or the "state court action"). There is a direct conflict of interest between Sheppard Mullin's role in representing Axos, who has an interest in complying with the subpoena, and its self-defense in the state court action, which has an interest in avoiding compliance with the subpoena. Sheppard Mullin should be disqualified as counsel for Axos.

## TRANSFER REQUEST

As an initial matter, Sparrow Fund Management, LP respectfully requests the Court transfer this motion to compel to the Southern District of New York, Magistrate Judge Katharine H. Parker, under FRCP 45(f). This case was filed in 2018 and is a factually and legally complex matter that has generated numerous discovery motions and motions on the pleadings. The factual background is complicated, to say the least. The third-party subpoena here is aimed at Axos Financial, a public company with a significant physical presence within the Southern District of New York. (Declaration of Adam Heder ("Heder Decl.") ¶¶ 4-5). There is no reason Axos cannot just as easily appear in the Southern District of New York to defend this motion to compel as it would in this Court. Further, Sparrow has coupled its motion to compel with a motion to disqualify. The authority is undecided whether this Court would have jurisdiction to decide a motion to disqualify or whether, instead, its jurisdiction is limited exclusively to the motion to compel.

The court where compliance with a subpoena is sought has discretion to transfer related motions to the issuing court only upon a finding of exceptional circumstances. Fed. R. Civ. P. 45(f). Such exceptional circumstances include situations in which transfer is "warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion . . . . When the issuing court has already ruled on issues presented by a subpoena-related motion, exceptional circumstances exist and the court of compliance may transfer the motion to the issuing court." *Moon Mt. Farms, LLC v. Rural Cmty. Ins. Co.,* 301 F.R.D. 426, 429 (N.D. Cal. 2014). That is exactly the case here. The Southern

District of New York has already ruled that MiMedx's pre-filing investigation, which incorporated Axos' own work, was not privileged. In fact, the Southern District of New York has also already conducted in camera reviews of supposedly privileged emails in this matter and ordered many of them either completely produced or produced in redacted form. (Heder Decl. ¶ 20, Ex. 8). It would promote efficiency and uniformity of rulings to transfer this motion back to the Southern District of New York.

## MOTION TO COMPEL

In the days before MiMedx sued Sparrow, it reached out to and retained Sheppard Mullin to assist in its effort to unmask Aurelius. In fact, days before MiMedx filed its lawsuit, Ms. Polly Towill from Sheppard Mullin told MiMedx's attorneys that she had a "70% probability" suspicion as to the identity of Aurelius – Chris Carroll (former principal of Sparrow). (See Declaration of Adam Heder ("Heder Decl.") ¶ 9, Ex. 2). This was based on information she had learned during her representation of Axos. (*Id.*)

Further, Axos had, through its counsel Sheppard Mullin, retained the services of private investigator Mintz Group, to identify Aurelius. And when MiMedx retained Sheppard Mullin, Sheppard Mullin, in turn, again retained Mintz Group this time on behalf of MiMedx to unmask Aurelius. (Heder Decl. ¶ 10, Ex. 3).

Mintz Group then prepared a report for MiMedx. That report expressly incorporates findings from Mintz's prior investigation for Axos into Aurelius. (Heder Decl. ¶ 16, Ex. 6). For example, MiMedx has produced a report that it claims it relied on in which a Mintz Group investigator followed a Sparrow principal into a bathroom in March 2017 - *six months* before Aurelius wrote its first report about MiMedx. (*Id.*)

When the Mintz Group set up its matter for MiMedx, it stated the following: "[Matter] Description: Anonymous Twitter handle @AureliusValue is spreading fake news about MiMedx, a publicly traded company, to intentionally cause its share price to drop. We are tasked to figure out who is behind the Twitter handle. Suspect it's hedge fund Sparrow Fund Management (*based on work in MG00000382*)." (Heder Decl. ¶ 12, Ex. 4 (emphasis added). In deposition, Ms.

Dresher of Mintz Group confirmed that the code "MG00000382" refers to the work Mintz Group had done for Axos. (Heder Decl. ¶¶ 13-15, Ex. 5.).

When Ms. Towill first reached out to Ms. Dresher about the matter, she stated that MiMedx's attorneys wanted to speak "with [her] regarding [her] investigation on the identity of Aurelius." (Heder Decl. ¶ 11, Ex. 3).

Indeed, in the state court action, Sheppard Mullin has defended itself by claiming that its attorney-client privilege *with Axos* prevents it from defending itself, implicitly conceding that it incorporated information learned from Axos into its pre-filing investigation on behalf of MiMedx. (Heder Decl. ¶ 18, Ex. 7).

In short, there is no question – nor any dispute – that Axos, either by itself or through its counsel, was actively sharing the findings of its own factual investigation into Aurelius, with MiMedx. Axos has conceded it had a "common interest" agreement in place with MiMedx related to their shared enterprise to identify Aurelius. (Heder Decl. ¶ 7).

Under the doctrine of imputed knowledge, it can be presumed that *all information* Sheppard Mullin gathered regarding Aurelius on behalf of Axos Financial was shared with MiMedx, whether it was shared expressly or not. *See Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 784 (1985) ("The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it." (citations omitted)). For Sheppard Mullin to claim otherwise would be a tacit admission of professional misconduct – MiMedx expressly engaged Sheppard Mullin so that it could tap into Sheppard Mullin's "knowledge bank" from its investigations into the identity of Aurelius. It should therefore be presumed that MiMedx (the principal) became aware of *all facts and analysis* in possession of Sheppard Mullin (its agent). The Southern District of New York has already ruled that MiMedx waived its privilege with respect to its Aurelius investigations, which necessarily includes whatever information MiMedx obtained from Axos whether through Axos' counsel or directly from Axos.

Yet now, in response to Sparrow's subpoena, Axos has refused to produce any documents relating to its investigation into Aurelius or Sparrow (or of any its principals), claiming that any

1  such material is protected both by work product and attorney client privilege.  It states that it is
2  willing to share communications in which it was transmitting investigatory materials re Aurelius
3  but goes on to state that no such materials exist.[1]  (Heder Decl. ¶ 7).  But Axos, at least through
4  its counsel, was actively sharing that information with MiMedx, whether it physically transmitted
5  the information through email or not.  And MiMedx expressly hired Sheppard Mullin purely to
6  gain the benefit of Sheppard Mullin's 18-month investigation into the identity of Aurelius that it
7  had undertaken on behalf of Axos Financial.  Thus, to the extent Axos has documents or
8  communications related to its investigations into Sparrow and Aurelius – including
9  communications with its counsel Sheppard Mullin, Axos should be required to produce those
10 materials whether Axos physically transmitted the materials, because that information was shared
11 with MiMedx whether through physical transmission or through attorneys' verbal sharing or
12 through the doctrine of imputed knowledge.  It should certainly be required to allow its employees
13 and agents to testify about what they knew and what they shared with MiMedx and its counsel
14 and investigators.

15     Axos has also claimed that it was sharing information pursuant to a common interest
16 agreement with MiMedx and therefore is shielded from producing documents.  However, because
17 Axos and MiMedx are wholly unrelated companies in completely different industries with no
18 commercial entanglements, the only *plausible* "common interest" the two firms could have had
19 was that both were engaged in a purely *factual investigation* into the identity of Aurelius.  Axos
20 was not a party to MiMedx's lawsuit against Sparrow – nor could it have been.  *Strougo v. BEA*
21 *Assocs.,* 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (citation omitted) ("The key consideration [for a
22 common interest analysis] is that the nature of the interest be identical, not similar, and be legal,
23 not solely commercial." (internal citation omitted)).

24     Further, Sparrow recently took the deposition of Staci Dresher, the primary principal for
25 the Mintz Group.  Counsel for Mintz Group repeatedly instructed his client, Ms. Dresher,
26 throughout the deposition to not answer any questions about any work Mintz Group had done or

---

[1] To be clear: there was potentially only one such document, which Axos withheld, but which MiMedx produced. (Heder Decl. ¶ 7).

information Mintz Group had obtained while working for BOFI, relating to the investigations into Sparrow and Aurelius. Ms. Dresher was instructed not to answer any such questions, even when Sparrow's counsel clarified that he was inquiring about that information only to the extent it was shared with MiMedx – which much/most/all of it undoubtedly was. Ms. Dresher's attorney clarified that his instructions were based on instructions from Axos' attorney that it was not waiving any work product or attorney client privileges. (Heder Decl. ¶ 14).

Sparrow and MiMedx have already briefed at length before the Southern District of New York what can and cannot be considered privileged or work product in this matter. As that court made clear, "MiMedx has clearly waived privilege as it relates to all facts its investigators and attorneys collected as part of the pre and post-suit investigations, attorney-client communications relaying those facts, and attorney-client communications drawing factual conclusions based on the facts collected." (CM ECF No. 207, at p. 9). Information that MiMedx learned from Axos' previous investigations, whether obtained through Axos directly or through its counsel, is obviously directly relevant to the nature, quality, and scope of MiMedx's supposed pre and post-filing investigations. Indeed, we know that Axos had concluded Chris Carroll was Aurelius and Axos' attorney-turned-MiMedx's attorney, Polly Towill of Sheppard Mullin, believed that Chris Carroll was likely Aurelius. Yet, for unknown reasons, MiMedx changed course and did not identify Chris Carroll as Aurelius when it filed its lawsuit. We do not know what specific information Ms. Towill shared from Axos' investigations with MiMedx. We also do not know what information Mintz Group shared from Axos' investigations with MiMedx. However, one thing is clear – the information that Ms. Towill relayed to MiMedx based on her knowledge of Axos' investigation ultimately resulted in MiMedx deciding to sue Sparrow.

Axos will no doubt argue that, whether MiMedx waived the privilege is irrelevant as to whether it waived the privilege. Not so. Either Axos authorized its attorney to share the results of its investigations with MiMedx, or Sheppard Mullin improperly shared confidential client information with MiMedx. If the former, then Axos undisputedly waived the privilege. If the latter, Axos may have a quarrel with its former counsel, but it doesn't change the fact that any

such information was shared with MiMedx and formed a part of MiMedx's investigations into Aurelius. Again, either way, Sparrow is entitled to the information.

MiMedx concealed Axos's role in its lawsuit against Sparrow even though MiMedx first got the idea to sue Sparrow from Axos/Sheppard Mullin. The very fact that two public companies hatched a secret scheme to hunt down a blogger that had exposed their frauds – and that the CEO of one of the companies is now heading to prison – strongly suggests that Axos is in possession of documents that speak to a malicious and ulterior motive for MiMedx's sham lawsuit against Sparrow. Sparrow has a right to discover exactly what Axos's role was in engineering MiMedx's sham lawsuit against Sparrow, including the right to discover communications between Axos and Sheppard Mullin regarding Sparrow that may speak to MiMedx's malicious or ulterior basis for its lawsuit against Sparrow.

Again, Sparrow is requesting the Court compel Axos to do the following:

4. Produce all documents and communications related to Sparrow Fund Management, LP, or any of its principals, including communications with third parties and counsel it engaged to investigate Sparrow; and

5. Produce all documents and communications related to identifying Aurelius Value, including communications with third parties and counsel it engaged to investigate Aurelius; and

6. Allow both its own employees and those it retained, in this case Mintz Group and potentially others, to testify about what work was done on its behalf to discover Aurelius, and to testify about that work to the extent that work was shared with MiMedx.

## MOTION TO DISQUALIFY

"Whether an attorney should be disqualified is an issue of state law." *T1 Payments Llc v. New U Life Corp.,* No. 2:19-cv-01816-APG-DJA, 2021 U.S. Dist. LEXIS 7414, at *27 (D. Nev. Jan. 14, 2021). "The district court has the responsibility for controlling the conduct of attorneys practicing before it." *Tr. Corp. of Mont. v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983)

"'A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' Disqualification of counsel not only prevents attorneys from breaching their ethical duties, but also protects the judicial process from any taint of unfairness that might arise from conflicts of interest. 'A conflict arises when the circumstances of a particular case present a 'substantial risk that the lawyer's representation of the client would be adversely affected by the lawyer's own interests.' Where such a conflict arises, and an attorney's continued representation threatens that attorney's client with cognizable injury or would undermine the integrity of the judicial process, a trial court may grant a motion for disqualification." *Bernhoft Law Firm, S.C. v. Pollock*, No. 12-CV-1608 W (BLM), 2013 U.S. Dist. LEXIS 18988, at *3-5 (S.D. Cal. Feb. 12, 2013) (internal citations omitted). Moreover, Sparrow has standing to move to disqualify even if it is not a current or former client of Axos. *Bernhoft Law Firm, S.C. v. Pollock*, No. 12-CV-1608W (BLM), 2013 U.S. Dist. LEXIS 97165, at *7-9 (S.D. Cal. July 11, 2013)

There are two specific rules of California's Rules of Professional Conduct at issue. First is Rule 3.7, which prohibits a lawyer from advocating in a matter in which that lawyer may also be called as a witness. At issue in the underlying matter is the sufficiency and integrity of MiMedx's supposed prefiling and post-filing investigation. And the court in that matter has already ruled that factual investigation is not privileged. Sheppard Mullin played an integral part in both the pre and post-filing investigations. It was Sheppard Mullin who apparently first gave MiMedx the idea to sue Sparrow. Sheppard Mullin managed the private investigator, Mintz Group. And Sheppard Mullin remained actively engaged in continuing to hunt for Aurelius even after MiMedx had sued Sparrow as Aurelius. Thus, it is difficult to imagine how Ms. Towill, who has represented Axos in connection with this subpoena to date, can represent Axos when she will no doubt be a fact witness in the same matter. (Sparrow has in fact already noticed her deposition and is working with counsel to pinpoint the date for doing so) (Heder Decl. ¶ 19).

Second is Rule 1.7(b), which states a "[a] lawyer shall not, without informed written consent . . ., represent a client if there is a significant risk the lawyer's representation of the client

will be materially limited . . . by the lawyer's own interest." Axos has an interest in complying with the subpoena. Sheppard Mullin, on the other hand, does not. In fact, in the state court action, Sheppard Mullin has hinged its defense on the argument that Axos will not waive the privilege and thus it cannot appropriately defend itself. (Heder Decl. ¶¶ 17-18). It is difficult to imagine how Sheppard Mullin could appropriately advocate for Axos when its own interests so clearly hang in the balance.

Sparrow has asked Sheppard Mullin to recuse itself; it has declined. Sparrow respectfully asks the Court to disqualify Sheppard Mullin from representing Axos in connection with this motion to compel to ensure integrity in this dispute and that Axos is not represented by an entity whose interest are so inextricably intertwined with those of its client's.

## CONCLUSION

Sparrow respectfully requests the Court: 1) Transfer this motion to compel back to the Southern District of New York; or, in the alternative, 2) Order Axos to produce the documents identified above; and 3) Disqualify Sheppard Mullin from its representation of Axos in this matter.

Dated: September 14, 2021

Respectfully submitted,

**INFINITY LAW GROUP LLP**

By: /s/ S. Ashar Ahmed
S. Ashar Ahmed, CSB #256711
Of Attorneys for Plaintiff Sparrow Fund Management, LP