1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INFINITY LAW GROUP LLP**
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

# **EXHIBIT 1**

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern District of New York

| | | |
|---|---|---|
| SPARROW FUND MANAGEMENT, LP, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:18-cv-04921-PGG-KHP |
| MIMEDX GROUP, INC., | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                            Axos Bank
_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attached Exhibit 1 hereto

| Place:  4350 La Jolla Village Drive, Suite 140<br>San Diego, CA 92122 | Date and Time:<br>       June 5, 2020 at 9:30 a.m. |
|---|---|

  The deposition will be recorded by this method:    court reporter

*Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

      The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     04/08/2020
       _____

        *CLERK OF COURT*
                                                    OR
                                                         s/ Adam S. Heder
_____          _____
  *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Plaintiff Sparrow Fund Management, LP _____ , who issues or requests this subpoena, are:

Adam S. Heder, Harris Berne Christensen LLP, 15350 SW Sequoia Parkway, Suite 250, Portland, OR 97224
adamh@hbclawyers.com, 503-968-1475

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

**Exhibit 1**
**Page 1 of 8**

# EXHIBIT 1

## INSTRUCTIONS

### IMPORTANT – PLEASE REVIEW CAREFULLY

1.     You must respond to each numbered request, whether or not you actually have documents that satisfy the request. This request is intended to be perpetual throughout the pendency of this action, up to and including trial, so that any new documents or information which fall within the classifications below should be forwarded to their attorneys within ten (10) days after any such document or information comes within the possession, custody or control, of Axos Bank, or upon receipt if within ten (10) days of trial.

2.     This request applies to documents in the care, custody or control of Axos Bank, or its agents, affiliates, employees, or officers. If a document was, but is no longer, in Your possession or subject to your control, please state (a) what disposition was made of it; (b) by whom; (c) the date or dates or approximate date or dates on which such disposition was made; and (d) why.

3.     Pursuant to FRCP 45(a)(1)(A)(iv) you are entitled to the following disclosures regarding FRCP 45(c), (d), (e), and (g) compliance with this subpoena:

(c) *Place of Compliance.*
    (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
        (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
        (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
            (i) is a party or a party's officer; or
            (ii) is commanded to attend a trial and would not incur substantial expense.
    (2) *For Other Discovery.* A subpoena may command:
        (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
        (B) inspection of premises at the premises to be inspected.

Exhibit 1
Page 1

**Exhibit 1**
**Page 2 of 8**

(d) *Protecting a Person Subject to a Subpoena; Enforcement.*

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

Exhibit 1
Page 2

**Exhibit 1**
**Page 3 of 8**

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) *Duties in Responding to a Subpoena.*

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

Exhibit 1
Page 3

**Exhibit 1**
**Page 4 of 8**

(g) *Contempt.*
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

4.          Request is made that on the media that includes the responsive documents, a folder be created for each request number and that responsive electronic documents and emails be placed in the folder corresponding to each request number. Each document of the kind requested herein shall be produced in a manner which preserves its sequential relationship with other documents being produced and shall include the file folder and folder tabs associated with its file location, and, if not apparent on the folder or tabs, shall be accompanied by identification of the person or entity from whose files it was taken and such additional source information as is necessary to enable the parties to determine the document's original (pre-production) location. Responses to all requests shall be produced in native file format (e.g. the actual Word files, Excel files, and Emails) on a CD-ROM, DVD, flash drive, external hard drive, or online repository in a version readable under Windows XP or higher. In the event the data exists as a paper document only, request is made that the paper document be scanned and produced as an Adobe PDF file.

## DEFINITIONS

A.          **Document.** The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

B.          **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

C.          **Sparrow.** The term "Sparrow" refers to Sparrow Fund Management, LP, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

Exhibit 1
Page 4

**Exhibit 1**
**Page 5 of 8**

D.    **You.** "You" or "Your" refers to Axos Bank, and any affiliate, subsidiary, parent corporation, employee, officer, agent, and/or any entity or person acting on its behalf.

E.    **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing or constituting.

F.    All entities referred to herein refer to the entity itself as well the entity's officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

## PRIVILEGED INFORMATION

A.    If a privilege is claimed with respect to any Document, Communication, or information, the responding party is instructed to provide a privilege log stating in reasonable detail the basis for that claim, and describing the nature of the Document, Communication, or information being withheld from production, with sufficient detail to permit the requesting party to evaluate the claim or privilege, in accordance with the FRCP.

B.    Unless otherwise agreed by the parties or directed by the Court, where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion,

a.   The person asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

b.   The following information shall be provided in the objection, or (in the case of a deposition) in response to questions by the questioner, unless divulgence of such information would cause disclosure of the allegedly privileged information:

i.   For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document;

Exhibit 1
Page 5

**Exhibit 1**
**Page 6 of 8**

and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

ii. For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.

c. Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court.

d. Efficient means of providing information regarding claims of privilege are encouraged, and parties are encouraged to agree upon measures that further this end. For example, when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form.

Exhibit 1
Page 6

**Exhibit 1**
**Page 7 of 8**

## REQUESTS

**REQUEST NO. 1:** Please produce all Documents concerning the identity of Aurelius Value.

**RESPONSE:**


**REQUEST NO. 2:** Please produce all Documents concerning James Gibson.

**RESPONSE:**


**REQUEST NO. 3:** Please produce all Documents concerning Sparrow.

**RESPONSE:**


**REQUEST NO. 4:** Please produce all Documents concerning Nathan Koppikar, Andrew Secrist, and/or Chris Carroll.

**RESPONSE:**


**REQUEST NO. 5:** Please produce all Communications with MiMedx Group, Inc. ("MiMedx") and/or Parker "Pete" Petit concerning Aurelius Value, James Gibson, Sparrow, Nathan Koppikar, Andrew Secrist, and/or Chris Carroll.

**RESPONSE:**

Exhibit 1
Page 7

**Exhibit 1
Page 8 of 8**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INFINITY LAW GROUP LLP
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

# **<u>EXHIBIT 2</u>**

CONFIDENTIAL – PRODUCED PURSUANT TO PROTECTIVE ORDER

---

**From**:      Pernini, David M. [dpernini@wargofrench.com]
**Sent**:       9/27/2017 10:41:50 PM
**To**:         Lexi Haden [LHaden@mimedx.com]; Bill Taylor [BTaylor@mimedx.com]; Pete Petit [PPetit@mimedx.com]
**CC**:         Wargo, Joseph D. [jwargo@wargofrench.com]
**Subject**:    Aurelius information

Pete, Bill and Lexi,

As we mentioned on the phone, we had a call with Polly Towill of Shepard Mullins, the attorney for BofI federal bank.   Ms. Towill said that her and her client's investigation indicate that Christopher Carroll is Aurelius.   Carroll is a partner and COO at Sparrow Fund Management LP, based in New York City.   Apparently, his partner and Director of Research at Sparrow, Nathan Koppikar, also posts anonymously online using the pseudonym "Friendly Bear."

Ms. Towill gave her confidence level at 70% for this information.   She said that her confidence level would be 90%, but she is a lawyer and not privy to all the relevant information.   She said her client, BofI, has hired private investigators who uncovered information that she understands is solid in establishing the identity of Aurelius.   In addition, she has spoken with the counsel for other victims of Aurelius—specifically Bank of California and Pinkerton— who provided additional support for her conclusion.   The other parties found that whenever they served subpoenas or similar documents to either of these individuals seeking to prove they were posting anonymously, the reaction of the attorneys for Carrol and Koppikar was immediate and very strong, indicating they had struck a nerve.

> # Redacted - Privileged

David M. Pernini
WARGO FRENCH
Main Line (404) 853-1500
Main Fax (404) 853-1501
Direct Dial (404) 853-1520
Direct Fax (404) 853-1521
dpernini@wargofrench.com
www.wargofrench.com



---

The information in this message is intended for the addressee only and may contain privileged and confidential information.  If you are not the intended recipient, please immediately stop reading this message, delete it from your system and notify the sender at dpernini@wargofrench.com that it has been deleted.  Any unauthorized reading, distribution, dissemination, copying, or other use of the information in this message is strictly prohibited.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INFINITY LAW GROUP LLP
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

# **EXHIBIT 3**

CONFIDENTIAL – Produced Pursuant to Protective Order

**From:** Polly Towill
**Sent:** Monday, October 2, 2017 10:01 AM
**To:** Staci Dresher
**Subject:** Fwd: Follow up to investigation --pursuant to JOINT INTEREST AGREEMENT

Sent from my iPhone

Begin forwarded message:

> **From:** "Wargo, Joseph D." <jwargo@wargofrench.com>
> **Date:** October 2, 2017 at 5:09:16 AM PDT
> **To:** Polly Towill <PTowill@sheppardmullin.com>
> **Cc:** "Pernini, David M." <dpernini@wargofrench.com>
> **Subject: Re: Follow up to investigation  --pursuant to  JOINT INTEREST AGREEMENT**
>
> Polly,
> Please greenlight this.
> We are expecting to get an analysis today from Kasowitz.  Waiting a week for this from her seems a bit much. But let's get her moving.
>
> Joseph D. Wargo
> Wargo French
> <x-apple-data-detectors://3/0>999 Peachtree Street NE<x-apple-data-detectors://3/1>
> <x-apple-data-detectors://3/0>26th Floor<x-apple-data-detectors://3/1>
> <x-apple-data-detectors://3/0>Atlanta, Georgia 30309<x-apple-data-detectors://3/1>
> Telephone: (404) 853-1505<tel:(404)%20853-1505>
> Miami: (305) 777-6005<tel:(305)%20777-6005>
> Facsimile: (404) 853-1506<tel:(404)%20853-1506>
> E-Mail: jwargo@wargofrench.com<mailto:jwargo@wargofrench.com>
> Website:  www.wargofrench.com<http://www.wargofrench.com/>
>
> On Oct 2, 2017, at 12:09 AM, Polly Towill
> <PTowill@sheppardmullin.com<mailto:PTowill@sheppardmullin.com>> wrote:
>
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> From: Staci Dresher <Sdresher@mintzgroup.com<mailto:Sdresher@mintzgroup.com>>
> Date: October 1, 2017 at 8:51:34 PM PDT
> To: 'Polly Towill' <PTowill@sheppardmullin.com<mailto:PTowill@sheppardmullin.com>>
> Subject: RE: Follow up to investigation  --pursuant to  JOINT INTEREST AGREEMENT
>
> Hi Polly,
> I'll do my best to provide ballpark figures.
>
> For the forensic analysis and research of the Twitter accounts, use the plagiarism software to compare language across the web and other related web research, conducted by Mintz Group investigators, I'd estimate $5,000 to $8,000.

CONFIDENTIAL – Produced Pursuant to Protective Order

I have not yet connected with our outside language expert, but my best guess is a $5,000 budget to analyze and compare the Mike Tyson and Aurelius tweets.

I'd also add another 5 to 8 hours of my time to review and transmit results and consult with you and MiMedx.

All in, estimate a $15,000 budget, inclusive of costs.

Hope this helps,
Staci

From: Polly Towill [mailto:PTowill@sheppardmullin.com]
Sent: Sunday, October 1, 2017 6:46 PM
To: Staci Dresher <Sdresher@mintzgroup.com<mailto:Sdresher@mintzgroup.com>>
Subject: Re: Follow up to investigation --pursuant to JOINT INTEREST AGREEMENT

Can you give me any sort of budget.

Sent from my iPhone

On Oct 1, 2017, at 5:32 PM, Staci Dresher
<Sdresher@mintzgroup.com<mailto:Sdresher@mintzgroup.com>> wrote:
Hi Polly!
I just tried you. I'm home all evening although family in town. Call or text me when you're available. You have my cell - 415.307.3175.
Staci E. Dresher
Partner
Mintz Group
415.765.9900
Sdresher@mintzgroup.com<mailto:Sdresher@mintzgroup.com>


On Oct 1, 2017, at 4:22 PM, Polly Towill
<PTowill@sheppardmullin.com<mailto:PTowill@sheppardmullin.com>> wrote:
Can u call me 310 7401266

Sent from my iPhone

On Sep 30, 2017, at 11:04 AM, Staci Dresher
<Sdresher@mintzgroup.com<mailto:Sdresher@mintzgroup.com>> wrote:
Sorry I missed your call this morning, Polly.
If the 4:30 time I suggested in the prior email isn't good, let me know what works. We're taking the kids to the childrens service at 2:30, which was decided this morning.  I'm out and about most of the day but will make myself available.
Staci E. Dresher
Mintz Group
Partner, Associate General Counsel
T: (415) 765-9900
sdresher@mintzgroup.com<mailto:sdresher@mintzgroup.com>


On Sep 30, 2017, at 9:45 AM, Polly Towill
<PTowill@sheppardmullin.com<mailto:PTowill@sheppardmullin.com>> wrote:

Mintz_Sparrow_5458
**Exhibit 3**
**Page 2 of 4**

CONFIDENTIAL – Produced Pursuant to Protective Order

Staci:

As we discussed yesterday, counsel for MiMedx, Joe Wargo and David Pernini,  would like to speak with you regarding your investigation on the identity of Aurelius.  I am providing the contact information of  you folks below.  Are you still available today to speak and if so what time?   You mentioned 3 PST.  MiMedx is  working under a joint interest agreement with the Bank.  Staci I will call you on your cell as well to set this up today—time is of the essence.  I was not sure if I should provide your cell number.

Polly

Polly Towill
213.617.5480 | direct
213.443.2864 | direct fax
+13107401266 | cell
PTowill@sheppardmullin.com<mailto:PTowill@sheppardmullin.com> |
Bio<http://www.sheppardmullin.com/ptowill>

SheppardMullin
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com<http://www.sheppardmullin.com>

Joseph D. Wargo
Wargo French
999 Peachtree Street NE<x-apple-data-detectors://0/1>
26th Floor<x-apple-data-detectors://0/1>
Atlanta, Georgia 30309<x-apple-data-detectors://0/1>
Telephone: (404) 853-1505<tel:(404)%20853-1505>
Miami: (305) 777-6005<tel:(305)%20777-6005>
Facsimile: (404) 853-1506<tel:(404)%20853-1506>
E-Mail: jwargo@wargofrench.com<mailto:jwargo@wargofrench.com>
Website:  www.wargofrench.com<http://www.wargofrench.com/>

<image001.png><http://www.mintzgroup.com/>

 Staci E. Dresher
 Partner, Associate General Counsel
 450 Sansome Street, Suite 700 | San Francisco, CA 94111
 sdresher@mintzgroup.com<mailto:sdresher@mintzgroup.com>  T 415-765-9900 | F 415-765-9910
 CA PI license No. 187832

New York | Washington, D.C. | San Francisco | Miami | Chicago | Dallas | Montreal
Toronto | London | Beijing | Hong Kong | Mumbai | Singapore | Nairobi | São Paulo

This communication may be protected by the attorney/client privilege and may contain confidential information intended only for that person to whom it is addressed. If it has been

CONFIDENTIAL – Produced Pursuant to Protective Order

sent to you in error, please do not read it. Please reply to the sender by e-mail or the phone number immediately above that you have received the message in error. Then delete this message and any attachments without copying, forwarding or reading it. Any dissemination, distribution, copying, forwarding or other reproduction of this message is strictly prohibited. Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This communication may be protected by the attorney/client privilege and may contain confidential information intended only for that person to whom it is addressed. If it has been sent to you in error, please do not read it. Please reply to the sender by e-mail or the phone number immediately above that you have received the message in error. Then delete this message and any attachments without copying, forwarding or reading it. Any dissemination, distribution, copying, forwarding or other reproduction of this message is strictly prohibited. This communication may be protected by the attorney/client privilege and may contain confidential information intended only for that person to whom it is addressed. If it has been sent to you in error, please do not read it. Please reply to the sender by e-mail or the phone number immediately above that you have received the message in error. Then delete this message and any attachments without copying, forwarding or reading it. Any dissemination, distribution, copying, forwarding or other reproduction of this message is strictly prohibited. This communication may be protected by the attorney/client privilege and may contain confidential information intended only for that person to whom it is addressed. If it has been sent to you in error, please do not read it. Please reply to the sender by e-mail or the phone number immediately above that you have received the message in error. Then delete this message and any attachments without copying, forwarding or reading it. Any dissemination, distribution, copying, forwarding or other reproduction of this message is strictly prohibited.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INFINITY LAW GROUP LLP
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

# **EXHIBIT 4**

CONFIDENTIAL – Produced Pursuant to Protective Order

**From:** Staci Dresher
**Sent:** Monday, October 2, 2017 1:27 PM
**To:** NewCasesCA
**Subject:** RE: please open new case Monday morning

Can someone please open this?

---

**From:** Staci Dresher
**Sent:** Sunday, October 1, 2017 9:02 PM
**To:** NewCasesCA <NewCasesCA@mintzgroup.com>
**Subject:** please open new case Monday morning

Please open the following dispute matter.  (Make sure lawyers' names have both middle initial if on their web bio and end with Esq.)

Client details (full contact details copied below):
Lawyer-client is Polly Towill (make sure to confirm her full name in law firm bio (link below)
Underlying client is MiMedx
Client's Georgia outside counsel are Joe Wargo and David Pernini of Wargo French

Notes section:  This case is related to MG 382.  Same outside counsel (Polly Towill) and the Bank of the Internet and MiMedx have signed a joint interest agreement.

Description:  Anonymous Twitter handle @AureliusValue is spreading fake news about MiMedx, a publicly traded company, to intentionally cause its share price to drop.  We are tasked to figure out who is behind the Twitter handle.  Suspect it's hedge fund Sparrow Fund Management (based on work in MG00000382).

Due date is this Friday, Oct. 6.
Budget estimate is $15,000

Nathan Patin and I will be working on this.  May elicit some research help from SF.

Joseph D. Wargo
Wargo French
999 Peachtree Street NE
26th Floor
Atlanta, Georgia 30309
Telephone: (404) 853-1505
Miami: (305) 777-6005
Facsimile: (404) 853-1506
E-Mail: jwargo@wargofrench.com

**David M. Pernini**
Managing Partner - Atlanta
dpernini@wargofrench.com
404-853-1520
http://www.wargofrench.com/attorneys/david-m-pernini

Polly Towill
213.617.5480 | direct
213.443.2864 | direct fax
+13107401266 | cell
PTowill@sheppardmullin.com | Bio

CONFIDENTIAL – Produced Pursuant to Protective Order

**Sheppard**Mullin

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com



Staci E. Dresher
Partner, Associate General Counsel
450 Sansome Street, Suite 700 | San Francisco, CA 94111
sdresher@mintzgroup.com  T 415-765-9900 | F 415-765-9910
CA PI license No. 187832

**New York** | Washington, D.C. | San Francisco | Miami | Chicago | Dallas | Montreal
Toronto | London | Beijing | Hong Kong | Mumbai | Singapore | Nairobi | São Paulo



**<u>EXHIBIT 5</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INFINITY LAW GROUP LLP
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF NEW YORK

3                      --o0o--

4     SPARROW FUND MANAGEMENT, LP,

5          Plaintiff,

6     vs.                      No. 1:18-cv-04921-PGG-KHP

7     MIMEDX GROUP, INC., PARKER H.

      "PETE" PETIT and JOHN DOES

8     1-10,

9          Defendants.

                                    /

10

11

12

13            VIDEOTAPED VIDEOCONFERENCE

14            DEPOSITION OF STACI DRESHER

15                June 24, 2021

16

17

18

19

20

21

22     Stenographically Reported by:

23     Janice L. Belcher, CSR No. 12342

24     Job No. 4638564

25     Pages 1 - 227

Page 2

1                        I N D E X

2                                                    PAGE

3   EXAMINATION BY MR. HEDER                          6

4

5

6

7

8

9

10                     E X H I B I T S

11                                                   PAGE

12   EXHIBIT 28  11/3/17 Email from Nathan Patin to    207

13            Staci Dresher and Nicolette Damianou

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1          VIDEOCONFERENCE DEPOSITION OF STACI DRESHER

2

3          BE IT REMEMBERED, that pursuant to Notice, and on

4     the 24th day of June, 2021, commencing at the hour of

5     9:46 a.m., Pacific Standard Time, via videoconference

6     before me, JANICE L. BELCHER, a Certified Shorthand

7     Reporter, appeared STACI DRESHER, produced as a witness

8     in said action, and being by me first duly sworn, was

9     thereupon examined as a witness in said cause.

10

11                         --o0o--

12

13    APPEARANCES VIA VIDEOCONFERENCE:

14    For Plaintiff:

15              ADAM S. HEDER

                Harris, Berne, Christiansen, LLP

16              15350 SW Sequoia Parkway, Suite 250

                Portland, Oregon  97224

17              (503)968-1475

                adamh@hbclawyers.com

18

      For Witness Staci Dresher:

19

                KIMO PELUSO

20              MAYA BRODZIAK

                Sher Tremonte, LLP

21              90 Broad Street, 23rd Floor

                New York, New York  10004

22              (212)202-4156

                kpeluso@shertremonte.com

23              mbrodziak@shertremonte.com

24

25

Page 4

```
 1     For Defendant MiMedx Group, Inc.:
 2              PETER T. SHAPIRO
                ARIADNE PANAGOPOULOU
 3              Lewis Brisbois Bisgaard & Smith, LLP
                77 Water Street, Suite 2100
 4              New York, New York  10005
                (212)232-1300
 5              peter.shapiro@lewisbrisbois.com
                ariadne.panagopoulou@lewisbrisbois.com
 6
       Also Present:
 7
                LONNIE WADE, Videographer
 8              A.J. SECRIST
                CHRISTIAN CHO
 9              NATHAN KOPPIKAR
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

 1              THE VIDEOGRAPHER:  Good morning, everyone.

 2      Good afternoon in New York.  We're going on the record

 3      at 9:30 a.m. locally on June 24th, 2021.

 4              This is the beginning of Media Unit 1 in the

 5      video-recorded deposition of Ms. Staci Dresher in the

 6      matter of Sparrow Fund Management LP versus MiMedx

 7      Group, Inc., et al., filed in the United States District

 8      Court, Case Number 118-CV-04921PGGKHP.

 9              This deposition is being held by Zoom.  My name

10      is Lonnie Wade from the firm Veritext.  I'm the

11      videographer located in Corona, California.  The court

12      reporter is Ms. Janice L. Belcher with the firm

13      Veritext.

14              Counsel, will you please state your appearances

15      and affiliations slowly and clearly for the record

16      beginning with the taking attorneys.

17              MR. HEDER:  Sure.  My name Adam Heder, and I'm

18      Counsel for Plaintiff, Sparrow Fund Management.  Sitting

19      here next to me off camera is a summer associate,

20      Christian Cho.

21              I think, Peter, you're up.

22              MR. SHAPIRO:  Oh, sorry.  I thought Kim was

23      going next.

24              I'm Peter Shapiro from Lewis Brisbois, Attorney

25      for Defendant, and also present is my associate who can

Page 6

```
 1   introduce herself.
 2          MS. PANAGOPOULOU:  Hello.  This is Ariadne
 3   Panagopoulou.  I also appear on behalf of the defendant
 4   MiMedx.
 5          MR. PELUSO:  This is Kimo Peluso from Sher
 6   Tremonte LLP, Counsel for the witness.  And also with me
 7   today from our firm is Maya Brodziak.
 8          MS. BRODZIAK:  This is Maya Brodziak, sorry,
 9   from Sher Tremonte LLP, Counsel for the witness.
10          MR. HEDER:  I should also note that Mr. Nathan
11   Koppikar and Mr. AJ Secrist, principals of my client
12   Sparrow Fund Management, are attending this deposition
13   via Zoom.  Their names and profiles are appearing on the
14   screen, I'm sure everyone can see that.
15          THE VIDEOGRAPHER:  Will the court reporter
16   please swear in our witness.
17          (STACI DRESHER, sworn as a witness, testified
18   as follows.)
19          THE WITNESS:  I do.
20          THE VIDEOGRAPHER:  You may proceed.
21                          EXAMINATION
22   BY MR. HEDER:
23      Q   Can you please state your name for the record.
24      A   My name is Staci Dresher.
25      Q   Ms. Dresher, thank you for making yourself
```

Page 60

1        A    All right.  I have it up.

2        Q    Okay.  Okay.  This is -- we're looking at

3    Exhibit 7 here.  This is an email between you and an

4    email addressed New Cases CA at Mintz Group dot com.

5    What is that email address a reference to?

6        A    That's an intake email address so that one of

7    the admin will enter the case into our system.

8        Q    Okay.  So that was dated October 1st, and it

9    looks like this correlates with when with you opened the

10   new engagement for MiMedx; is that correct?

11       A    That is correct.

12       Q    Okay.  It states here under "note section," it

13   says:  This case is related to MG382.  Same outside

14   counsel Polly Towill and the Bank of Internet and MiMedx

15   have signed a joint interest agreement.

16            So what is MG382 a reference to?

17            MR. PELUSO:  The witness can answer that

18   question, just identifying what that number is, without

19   expanding on it.

20            THE WITNESS:  That is an internal Mintz Group

21   case matter number.

22   BY MR. HEDER:

23       Q    Okay.  And can you tell me what client it was

24   for?

25            MR. PELUSO:  The witness can answer the

Page 61

1  identity of the client assuming that it is a client that

2  we have already identified in this proceeding.  If it is

3  a client whose name has not come up yet, I would ask the

4  witness not answer the question until we've had a chance

5  to confer.

6          THE WITNESS:  Well, reading this document and

7  my understanding it's the same outside counsel,

8  Ms. Polly Towill and Bank of the Internet.

9  BY MR. HEDER:

10     Q    Okay.  All right.  So there -- the next

11 paragraph here says description, it says:  Anonymous

12 Twitter handle at Aurelius Value is spreading fake news

13 about MiMedx, a publicly traded company, to

14 intentionally cause its share prices to drop.  We are

15 tasked to figure out who is behind the Twitter handle.

16 Suspect it's hedge fund Sparrow Fund Management.  And

17 then in parentheses it says:  Based on work and MG382.

18          Do you see that?

19     A    I would.

20     Q    What my question for you is, what was the basis

21 of the suspicion that Sparrow Fund Management was behind

22 the Aurelius Twitter handle.

23          MR. PELUSO:  Objection to form.  And to the

24 extent -- the witness can answer unless it relates to

25 work performed for a prior engagement for a client other

```
 1     than MiMedx.
 2            MR. HEDER:  Kimo, I'm going to go on the record
 3     and contest this.  It says right here:  Based on work
 4     and MG382, which has already been established had been
 5     work done for and on behalf of BOFI, so we know that
 6     this was based on work done and on behalf of BOFI, but
 7     it clearly formed the basis, and a component, and
 8     integral component of Mintz Group's investigation into
 9     Sparrow Fund Management.  I don't know how that
10     information and the basis of that suspicion can't be
11     revealed in this deposition.
12            MR. PELUSO:  I understand your position that
13     given the interaction between the MiMedx engagement and
14     the descriptions that in the documents, however, again,
15     this -- this is all informed by a privilege waiver
16     finding as to one Mintz Group client that has not been
17     found as to another Mintz Group client, so I would
18     welcome a resolution of that issue by the court, but
19     without the benefit of that, I can't let the witness
20     testify about anything done as part of engagement for a
21     different client, and it doesn't really matter whether
22     you already know the answer.
23            MR. HEDER:  In fact, this was done in
24     connection with a joint interest agreement as referenced
25     in the document, so I think MiMedx, whose counsel is
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INFINITY LAW GROUP LLP
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

# **EXHIBIT 6**

CONFIDENTIAL – Produced Pursuant to Protective Order

**From:** Staci Dresher
**Sent:** Monday, October 2, 2017 6:01 PM
**To:** 'Polly Towill'; 'dpernini@wargofrench.com'; 'jwargo@wargofrench.com'
**Subject:** Report on findings to date (privileged and confidential)
**Attachments:** Memo_Aurelius, Mike Tyson, Sparrow (10.2.17).PDF; Sparrow on Union St.PDF


Polly, Joe, David –
Enclosed is a report with our findings to-date on Aurelius, Mike Tyson and Sparrow.  It's mostly what I told you over the weekend, and includes our current marching orders and some proposed follow-up steps.  I understand that you plan to file the complaint tomorrow and we are doing our best to get you additional, useful information before filing.  I hope to have more for you later tonight or tomorrow.

My cell is 415.307.3175 if you need to reach me when I'm not at the office.
Best,
Staci



Staci E. Dresher
Partner, Associate General Counsel
450 Sansome Street, Suite 700 | San Francisco, CA 94111
sdresher@mintzgroup.com  T 415-765-9900 | F 415-765-9910
CA PI license No. 187832

**New York** | Washington, D.C. | San Francisco | Miami | Chicago | Dallas | Montreal
Toronto | London | Beijing | Hong Kong | Mumbai | Singapore | Nairobi | São Paulo

CONFIDENTIAL – Produced Pursuant to Protective Order



PRIVILEGED AND CONFIDENTIAL                    ATTORNEY WORK PRODUCT

M E M O R A N D U M

October 2, 2017

TO:     Polly Towill, Esq.
        Joseph D. Wargo, Esq.
        David M. Pernini, Esq.

FR:     Staci Dresher

RE:     <u>Investigation of @AureliusValue and Sparrow Fund Management</u>

       This memorandum summarizes our investigation to date of the anonymous Twitter profiles @AureliusValue ("Aurelius") and @Tysoncapllc ("Mike Tyson"), and their connections to Sparrow Fund Management and Sparrow's three principals, Nathan Koppikar, Andrew Secrist and Christopher Carroll, pursuant to your request and at your direction to assist you in anticipation of litigation.

       Our findings are based on our research and forensic analysis of the Twitter profiles @AureliusValue and @Tysoncapllc, and other web activity tied to Aurelius and Mike Tyson, as well as a review of public records and discreet onsite visit to Sparrow's office in San Francisco, California.

       We have proposed in bold certain investigative steps we could take to follow up on our results to date.

<u>INVESTIGATIVE FINDINGS</u>

<u>Sparrow Fund Management – Formed in 2016, Based in New York</u>

       Sparrow Fund Management is a hedge fund based in New York that was founded in April, 2016, according to financial databases.  Sparrow is an exempt Reporting Adviser (ERA) and not required to register with the SEC.

       As you know, there are three related Sparrow entities that were formed in Delaware in 2016 and registered as a foreign entity in New York, according to Department of State records:

CONFIDENTIAL – Produced Pursuant to Protective Order

- Sparrow Fund Management LP:  formed in Delaware on February 19, 2016; registered agent is Corporation Service Company at 2711 Centerville Road, Ste. 400 in Wilmington, DE.  Also registered in New York as a foreign corporation on February 23, 2016; registered agent is c/o Sparrow GP, LLC, Attn: Christopher Carroll, 101 Park Ave. 33rd floor, New York, NY 10178.

- Sparrow Fund Performance LLC:  formed in Delaware on same date as Sparrow Fund Management LP and has the same registered agent at same Wilmington address.  Also registered in New York as a foreign corporation on March 2, 2016; registered agent is Sparrow Fund Performance, LLC, Attn:  Christopher Carroll at same Park Ave address.

- Sparrow GP, LLC:  formed in Delaware on same date as the LP and LLC and has the same registered agent at same Wilmington address.  Also registered in New York as a foreign corporation on February 23, 2016; registered agent is Attn: Christopher Carroll at the same 101 Park Ave. address.

<u>Sparrow has Three Principal Owners – Carroll, Secrist and Koppikar</u>

Further, as you know, there are three owners of Sparrow Fund Management, and each own between 25 and 50 percent of the company, according to public record and financial databases:

- Christopher A. Carroll, Chief Operating Officer – based in New York, NY
- Andrew J. ("AJ")Secrist, Portfolio Manager – based in New York, NY
- Nathan L. Koppikar, Director of Research – based in San Francisco, CA

Koppikar was born on June 16, 1987 and is 30 years old.  Koppikar is currently tied to two Bay Area addresses:  671 Bourne Ct. in Danville, CA, which appears to be his parents' home and 2040 Franklin St., Apt. 508 in San Francisco, according to public record databases.  He attended Stanford University Graduate School of Business at least in 2013, according to the University website (we could not confirm whether he graduated).

Carroll was born on January 21, 1984 and he is 33 years old.  He lives at 157 E. 81st Street, Apt. 3C in New York, New York, according to databases.  Carroll attended Stanford University Graduate School of Business from 2011 to 2013 and graduated with a MBA, according to his LinkedIn profile.

Secrist was born on August 5, 1983 and is currently 34 years old, according to databases.  He lives at 215 W. 68th St., Apt 3C in New York, NY according to databases.  Secrist attended Stanford University Graduate School of Business and graduated with a MBA (likely in 2013 based on dates in his LinkedIn profile).



CONFIDENTIAL – Produced Pursuant to Protective Order

We note that Carroll, Secrist and Koppikar overlapped at Stanford University as students in 2011 to 2013, and worked together at the same investment firms, Goldman Sachs and Tiger Management, in New York City.

<u>Sparrow Fund at Same New York Address as Tiger Management</u>

Sparrow Fund's office at 101 Park Ave., 33rd floor is the same address for Tiger Management, according to several news articles, including a July 2013 <u>Commercial Observer</u> article which noted that Tiger Management renewed a "long-term lease" at 101 Park Avenue for the entire 33rd, 47th and 48th floors. We also learned from a prior client that the founder of Tiger Management, Julian Robertson, has a son, Alexander Robertson, who attended Stanford University with Carroll, Secrist and Koppikar.

<u>Koppikar and Sparrow Fund Connected to Mike Tyson's Twitter and Gmail Profiles</u>

We found two connections between the Mike Tyson moniker and Sparrow Fund and Nathan Koppikar, as follows.

We obtained a copy of the September 1, 2016 letter from the Office of the Comptroller of the Currency addressed to "Mike Tyson" at 2030 Union Street in San Francisco, California, written in response to Mike Tyson's FOIA request. There was no connection between Koppikar or Sparrow Fund to this address through our research of public record databases.

On March 23, 2017, a Mintz Group investigator visited the 2030 Union Street address and the building marquis noted "Sparrow Fund Management" for Suite 208 (see attached). The investigator recognized Nathan Koppikar in the men's bathroom and briefly spoke with him about the vacant suite in the building. We confirmed the landlord for the office building is James Haramis.

**At your request, we could contact the 2030 Union Street landlord James Haramis for details on the suite 208 tenant.**

Further, we determined that the email address for the Twitter handle @tysoncapllc was tysoncapllc@gmail.com, which is associated with a Google + profile for a "Mike Tyson." The owner of tysoncapllc@gmail.com and the related Google + account was linked a mobile phone ending with "75" – coincidentally, Nathan Koppikar's mobile phone number is (925) 216-6175, according to phone record databases.



CONFIDENTIAL – Produced Pursuant to Protective Order

We found no further social media accounts or other web activity tied to tysoncapllc@gmail.com or the Google + account.

<u>Aurelius Twitter Profile and Website Analysis</u>

We conducted deep forensic analysis of @AureliusValue and related website, http://www.aureliusvalue.com.  Our efforts did not identify an email, phone number or other identifying information to connect to the Sparrow Fund, its principals or other individuals or entities.

On March 8, 2017, @Aureliusvalue posted:  "We have launched http://www.aureliusvalue.com  and will release a new short report today on a NYSE listing.  Some real wild ones in the pipeline."  We found the aureliusvalue.com website was active and hosted on a server in Iceland that claims is not subject to U.S. or non-Icelandic law and does not censor content.  The web domain was registered in February 2017 and is private.  We found content on the website dated from 2015 and 2016 that was auto-uploaded from a feed of Aurelius' Seeking Alpha posts.

> **We are continuing our analysis of the aureliusvalue.com website and Twitter handle.**

<u>Comparison of Mike Tyson and Aurelius Value Twitter Profiles</u>

We deeply analyzed the tweets, links and other activity between @tysoncapllc and @aureliusvalue, and found the following details:

- The two Twitter accounts tweet almost entirely on weekdays, both primarily from a mobile phone.  Neither Twitter account has a geolocation data.  Note that it's impossible to accurately determine the time zone a tweet was made (since time zones can be manipulated on phones and Twitter profiles).

- Aurelius and Tyson frequently link to and "like" each other's Twitter posts, often within minutes from posting a tweet on a target company.  We are continuing our analysis of their co-activity.

- Marc Cohodes was the first real person on Twitter (i.e. not an anonymous profile) who followed Mike Tyson and Aurelius, and there were frequent communications between the three of them regarding Bank of the Internet.  In fact, they all reference one another and only each other as if discussing an inside joke.  Note that Cohodes is a known short seller who publicly stated he shorted BofI's stock.

4



CONFIDENTIAL – Produced Pursuant to Protective Order

We are conducting the following steps to find links between Mike Tyson and Aurelius, and demonstrate that Koppikar, Carroll and/or Secrist are the authors of Aurelius' moniker, tweets, Seeking Alpha articles and content on aureliusvalue.com website:

1) Continued forensic analysis of the Twitter handle activity for Aurelius.

2) Hired an expert linguist who is a former FBI agent to demonstrate connections in the writings between the Mike Tyson and Aurelius's tweets, as well as Aurelius's tweets and social media activity for Carrol, Secrist and/or Koppikar.

3) Use plagiarism software to identify unique language from Aurelius' tweets elsewhere on the web that may be tied back to Sparrow or its owners.

4) Continued research for links to websites, blogs, mentions of places, people or anything that could tie back to Aurelius or Tyson or to Koppikar, Secrist, Carrol or Sparrow Fund.

5)  We also propose to dig into the possible connection between Marc Cohodes and Sparrow Fund, or possibly Tiger Management.



Mintz_Sparrow_5435

**Exhibit 5**
**Page 6 of 7**

CONFIDENTIAL – Produced Pursuant to Protective Order





**INFINITY LAW GROUP LLP**
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT 7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                          September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**              4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 09/01/2021 for Hearing on Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion); Hearing on Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion), now rules as follows:

Case Number: 21STCV03686 Hearing Date: September 1, 2021 Dept: 34
SUBJECT: (1) Anti-SLAPP Motion

Moving Party: Defendant Sheppard, Mullin, Richter Hampton LLP

Resp. Party: Plaintiff Sparrow Fund Management, LP

(2) Anti-SLAPP Motion

Moving Party: Defendant Wargo French, LLP

Resp. Party: Plaintiff Sparrow Fund Management, LP

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                                    September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                                    4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield            CSR: None
Judicial Assistant: R. Navarro                  ERM: None
Courtroom Assistant: None                       Deputy Sheriff: None

The anti-SLAPP motions are GRANTED.

BACKGROUND:

Plaintiff brings this action against Defendants which arises out of Defendants' wrongful use of civil proceedings in the matter of MiMedx Group v. Sparrow Fund Management, LP, et al. (Complaint, ¶ 1.)

On January 29, 2021, Plaintiff Sparrow Fund Management, LP commence this action against Defendants Wargo French LLP and Sheppard Mullin Richter Hampton LLP for (1) malicious prosecution; (2) intentional interference with prospective economic advantage; and (3) negligent interference with prospective economic advantage.

On June 25, 2021, Defendant Mullin Richter Hampton LLP filed the instant special motion to strike under Code of Civil Procedure section 425.16 ("anti-SLAPP motion").

On July 7, 2021, Defendant Wargo French, LLP filed the instant anti-SLAPP motion.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                     September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                      4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield            CSR: None
Judicial Assistant: R. Navarro                  ERM: None
Courtroom Assistant: None                       Deputy Sheriff: None

On July 7, 2021, the Court granted Defendant Wargo French LLP's ex parte application to exceed motion memorandum page limit.

On July 7, 2021, the Court granted in part Plaintiff's ex parte application for an order continuing the anti-SLAPP hearing for the purpose of hearing Plaintiff's motion to lift stay on discovery.

On July 20, 2021, the Court granted Plaintiff's ex parte application for an order continuing the anti-SLAPP hearing for the purpose of hearing Plaintiff's motion to lift stay on discovery.

On July 27, 2021, the Court continued Plaintiff's motion to lift stay and allow limited discovery and ordered Plaintiff to serve a list of approximately 30 documents on Defendant.

On July 30, 2021, the Court granted Defendant Wargo French, LLP application to be admitted pro hac vice for David M. Pernini.

On August 6, 2021, pursuant to a written stipulation, the Court continued hearing on the anti-SLAPP motions to September 1, 2021.

On August 10, 2021, pursuant to Plaintiff's request, the second and third causes of action were dismissed without prejudice.

Before the Court are Defendants' anti-SLAPP motions.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                 4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

ANALYSIS:

I. Anti-SLAPP Motions

A. Request for Judicial Notice

Defendant Sheppard Mullin Richter Hampton LLP requests that the Court take judicial notice of:

· Exhibit Q: Order in Mimedx Group, Inc, et al. v. Sparrow Fund Management LP, et al. Case No. 1:17-cv-07568-PGG-KHP (S.D.N.Y.), ECF No. 112;

· Exhibit R: Opinion & Order on Motion to Compel Production of Documents Withheld on Privilege Grounds in Sparrow Fund Management LP, v. Mimedx Group, Inc., Case No. 1:18-cv-04921-PGG-KHP (S.D.N.Y.), ECF No. 207;

· Exhibit S: Declaration of David M. Pernini in Mimedx Group, Inc, et al. v. Sparrow Fund Management LP, et al. Case No. 1:17-cv-07568-PGG-KHP (S.D.N.Y.), ECF No. 72;

· Exhibit N: Complaint in Mimedx Group, Inc, et al. v. Sparrow Fund Management LP, et al. Case No. 1:17-cv-07568-PGG-KHP (S.D.N.Y.), ECF No. 1;

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

---

· Exhibit T: Judgement in Mimedx Group, Inc, et al. v. Sparrow Fund Management LP, et al. Case No. 1:17-cv-07568-PGG-KHP (S.D.N.Y.), ECF No. 72;

· Exhibit U: Complaint in Sparrow Fund Management LP, v. Mimedx Group, Inc., Case No. 1:18-cv-04921-PGG-KHP (S.D.N.Y.), ECF No. 6;

· Exhibit V: First Amended Complaint in Sparrow Fund Management LP, v. Mimedx Group, Inc., Case No. 1:18-cv-04921-PGG-KHP (S.D.N.Y.), ECF No. 155;

· Exhibit I: Declaration of Nathan Koppikar in Sparrow Fund Management LP, v. Mimedx Group, Inc., Case No. 1:18-cv-04921-PGG-KHP (S.D.N.Y.), ECF No. 26;

· Exhibit W: The results from an Entity Search Report purchased from the State of Delaware, Department of State: Division of Corporations, showing that Sparrow Fund Management, LP's status as "Cancelled, Failure to Pay Tax";

· Exhibit X: Two screenshots from the California Secretary of State's website showing the results for a Business Search, which shows that Sparrow Fund Management, LP is not registered to do business in California; and

· Exhibit Y: A screenshot from the California Franchise Tax Board's Entity Status Letter website showing the results of a "Sparrow Fund" search.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 34

21STCV03686                                                                September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                                          4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield              CSR: None
Judicial Assistant: R. Navarro                    ERM: None
Courtroom Assistant: None                         Deputy Sheriff: None

---

The Court GRANTS Defendant's request for judicial notice as to Exhibits Q, R, S, N, T, U, V, I.
(Evid. Code, § 452, subd. (d).)

The Court GRANTS Defendant's request for judicial notice as to Exhibits W, X, Y. (Evid. Code,
§ 452, subd. (h).)

B. Evidentiary Objections

Wargo French submits 11 evidentiary objections to Plaintiff's evidence. The Court SUSTAINS
these objections.

Sheppard Mullin submits 2 evidentiary objections to the Heder declaration; 4 evidentiary
objections to the Green declaration; and 12 evidentiary objections to the Koppikar declaration.
The Court SUSTAINS these objections.

On September 1, 2021, the day of the anti-SLAPP Plaintiff Sparrow Management submitted 4
objections to the Polly Towill Declaration and an objection to the entire Declaration of Jeffrey
Williams. The Court SUSTAINS the objection to the Towill Declaration ¶ 13. Plaintiff's other
objections are OVERRULED.

C. Legal Standard

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                      September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                  4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

Under Code of Civil Procedure section 425.16, a party may move to strike a cause of action that
arises from any act of that person in furtherance of the person's right of petition or free speech
under the United States Constitution or the California Constitution in connection with a public
issue. The moving party has the initial burden to demonstrate that a cause of action is subject to a
special motion to strike. (Martinez v. Metabolife Inter. Ins. (2003) 113 Cal.App.4th 181, 186;
Fox Searchlight Pictures Inc. v. Paladino (2001) 89 Cal.App.4th 294, 304.) Specifically, the
court decides whether the moving party has made a prima facie showing that the attacked claims
arise from a protected activity, including the defendant's right of petition, or free speech, under a
constitution, in connection with issues of public interest. (See, e.g. Healy v. Tuscany Hills
Landscape & Recreation Corp., (2006) 137 Cal.App.4th 1, 5; Soukup v. Law Offices of Herbert
Hafif (2006) 39 Cal.4th 260, 278; C.C.P. § 425.16(e).)

A moving party can satisfy its burden by showing (1) statements made before legislative,
executive or judicial proceedings, or made in connection with matters being considered in such
proceedings, or (2) statements made in a public forum, or other conduct in furtherance of the
exercise of the constitutional rights of petition or free speech, in connection with issues of public
interest. (Code Civ. Proc., § 425.16(e); Equilon Enterprises v. Consumer Cause, Inc. (2002) 29
Cal.4th 53, 66.)

If the court finds such a showing has been made, the burden then shifts to the plaintiff, who must
demonstrate a probability of prevailing on the merits claim. (Equilon Enterprises, supra, 29
Cal.4th at p. 67.)

D. Discussion

Defendants Wargo French LLP and Sheppard Mullin Richter Hampton LLP each move to strike
the complaint pursuant to Code of Civil Procedure section 425.16. (Wargo French Motion, p.
1:2-6; Sheppard Mullin Motion, p. 2:5-10.) The Court will analyze both motions together, unless

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

21STCV03686                                                              September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                           4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

otherwise indicated.

1. First Prong: Defendants' Burden

As stated above, one category of protected conduct includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (Code Civ. Proc, § 425.16, subd. (e)(2).) Moreover, "A cause of action 'arising from' defendant's litigation activity . . . includes communicative conduct such as the filing, funding, and prosecution of a civil action.¿[Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation. [Citations.]" (Rusheen v. Cohen (2006) 37 Cal.4th 1048.) Courts "have adopted a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (Kashian v. Harriman (2002) 98 Cal.App.4th 892, 908.)

"The litigation privilege states simply that 'A privileged publication or broadcast is one made ... [i]n any ... judicial proceeding . . . .'" (Jarrow Formulas, Inc. v. LaMarche (2003) 31 Cal.4th 728, 737, citing Code Civ. Proc., §47(b).) The litigation privilege "enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings." (Ibid.) "'Communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege." (Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1057, quoting Rubin v. Green (1993) 4 Cal.4th 1187, 1193.)

The scope of applicability of the litigation privilege and the anti-SLAPP statute are not necessarily the same, but courts have referred to the privilege for guidance in ascertaining the scope of the anti-SLAPP statute. "[T]he litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite different purposes...." (See Flatley v. Mauro (2006) 39 Cal. 4th 299, 322-24; but see Gallanis-Politis v. Medina (2007) 152 Cal.App.4th 600, 617 [anti-SLAPP statute is coextensive with the definition of the litigation privilege].)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                          September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                 4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield              CSR: None
Judicial Assistant: R. Navarro                    ERM: None
Courtroom Assistant: None                         Deputy Sheriff: None

---

Defendants argue that "the Complaint alleges that [Defendants] engaged in tortious conduct by acting as counsel for MiMedx Group ("MiMedx") in a lawsuit against Sparrow" and "this conduct—filing a lawsuit—falls squarely within the auspices of California's anti-SLAPP statute." (Sheppard Mullin Motion, p. 2:11-14; Wargo Motion, p. 7:7-8.)

In opposition, Plaintiff does not discuss whether its claim arises out of acts by Defendants in furtherance of their right of petition or free speech.

Plaintiff's complaint contains a single cause of action for malicious prosecution against Defendants, alleging liability stemming from "Defendants' wrongful use of civil proceeding in the matter of MiMedx Group v. Sparrow Fund Management, L.P., et al." (Complaint, ¶ 1.) In particular, Plaintiff alleges:

"At all relevant times, Wargo French and Sheppard Mullin were assisting their clients to identify an anonymous blogger named Aurelius who had publicly exposed their clients' alleged involvement in pervasive fraudulent activities. Both law firms had one common purpose – to help their clients ascertain the identity of Aurelius. After encountering numerous roadblocks to unmasking Aurelius due to First Amendment protections, these law firms willfully perpetrated in an elaborate scheme that spanned multiple years, improperly utilizing court process in an attempt to extort the identity of Aurelius from Sparrow. While engaging in such conduct, Defendants knew that their conduct would tarnish Sparrow's reputation and damage relationships with existing and prospective investors. And Defendants' conduct did, in fact, ultimately cause disruptions so significant that it forced Sparrow to permanently shut down." (Ibid.)

Plaintiff further alleges that "Defendants instituted the Lawsuit against Sparrow without probable cause in that they knowingly, willfully and maliciously made false allegations against Sparrow, including claiming that Sparrow was Aurelius and was engaging in, among other things, illegal

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH LLP, et al.**

September 1, 2021
4:23 PM

| | |
|---|---|
| Judge: Honorable Michael P. Linfield | CSR: None |
| Judicial Assistant: R. Navarro | ERM: None |
| Courtroom Assistant: None | Deputy Sheriff: None |

market manipulation without any basis." (Id. at ¶ 68.)

"By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit." (Jarrow Formulas, Inc. v. LaMarche (2003) 31 Cal.4th 728, 741.) Here, the malicious prosecution claim is based solely on Defendants' representation of MiMedx Group in the matter of MiMedx Group v. Sparrow Fund Management, LP, et al. Therefore, this action arises out of acts in furtherance of the right of petition or free speech.

This first prong is satisfied, and, pursuant to law, the burden then shifts to Plaintiff.

## 2. Second Prong: Plaintiff's Burden

Where, as here, the moving party has successfully shifted the burden, the opposing party must demonstrate a probability of prevailing on the merits of the complaint. (Equilon Enterprises, supra, at p. 67; Code Civ. Proc., § 425.16(b)(1).) "[A]n action may not be dismissed under this statute if the plaintiff has presented admissible evidence that, if believed by the trier of fact, would support a cause of action against the defendant." (Taus v. Loftus (2007) 40 Cal.4th 683, 729.) Although the plaintiff does not have to prove its case at this juncture, the "plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Navellier v. Sletten (2002) 29 Cal.4th 82, 88-89; Zamos v. Stroud (2004) 32 Cal.4th 958, 965.) If the plaintiff does not demonstrate a probability of success on the merits, by competent, admissible evidence, or if the defendant shows that the plaintiff cannot prevail as a matter of law, the complaint must be stricken. (Evans v Unkow (1995) 38 Cal.App.4th 1490, 1498.)

In particular, malicious prosecution actions are disfavored, and, as such, are subject to stringent

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                    September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                              4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

conditions. (Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 872.) Under California law, the elements of malicious prosecution are that the prior action: (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice. (See, e.g. Sycamore Ridge Apartments, LLC v. Naumann (2007) 157 Cal.App.4th 1385, 1398.)

a. Plaintiff's Claim is Time-Barred as to Defendant Wargo French

Defendant Wargo French asserts that "at the outset, Sparrow's causes of action for malicious prosecution and tortious interference are time-barred given that they arose from conduct that terminated—at latest—in November 2018, yet Sparrow did not file suit until January 2021." (Wargo Motion, p. 9:9-11.) Defendant Wargo French asserts that "nor does the tolling agreement between Wargo French and Sparrow rescue Sparrow's claims" because Sparrow violated its agreement to forbear from filing suit until February 1, 2021, nullifying any corresponding agreement to toll the statute of limitations that Wargo French may have given in exchange." (Id. at p. 9:11-16.)0

Defendant Wargo French contends that Plaintiff's claim is subject to New York's one-year statute of limitations because Plaintiff "alleges that 'Sparrow's primary asset was its reputation,' and that its supposed damages were 'a direct result of the negative publicity, taint, and suspicions created by the Lawsuit." (Id. at p. 10:9-12, citing Complaint, ¶¶ 56, 60.) Defendant Wargo French explains that "the Sparrow I lawsuit concluded on November 7, 2018 and Sparrow admits that it started its alleged damages even earlier, 'following the filing of the Lawsuit' on October 4, 2017." (Id. at p. 10:13-15, citing Complaint, ¶¶ 55, 57.) Defendant Wargo French asserts that Plaintiff "also affirmatively alleges that its revenues in 2018 were 'down by 60% as a result of the Lawsuit' and that 'despite generating a 26% return in 2017 . . . Sparrow attracted 65% fewer prospective investors in the year following the filing of the Lawsuit [i.e., October 5, 2017 to October 5, 2018] compared to the six months prior.'" (Id. at p. 10:15-18, citing Complaint, ¶¶ 58-60.) Defendant Wargo states that "as a result of the foregoing, Sparrow contends that it was 'out of business by 2018.'" (Id. at p. 10:18-19, citing Complaint, ¶ 65.) Defendant Wargo argues that these allegations demonstrate that Plaintiff's malicious prosecution claim did not accrue

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                    September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**              4:23 PM
**LLP, et al.**


Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

until late 2018 and should have been brought no later than late 2019, but because Plaintiff filed this suit on January 29, 2021, its claim is time-barred. (Id. at p. 11:20-25.)


Defendant Wargo French argues that "recognizing this, Sparrow asserts that its tolling agreement with Wargo French rescues its causes of action." (Id. at p. 10:27-28, citing Complaint, ¶ 66.) Defendant Wargo French argues that the tolling agreement does not help Plaintiff because "while the tolling agreement did nominally apply to a malicious prosecution cause of action asserted against Wargo French, Sparrow mischaracterizes the agreement as doing nothing but 'tolling the limitation period of Sparrow's claims and causes of actions [sic] in this action until February 1, 2021.'" (Id. at p. 11:11-14, citing Complaint, ¶ 66.) Defendant Wargo French asserts that "if Sparrow were correct, the agreement would be void for lack of consideration." (Id. at p. 11:14-15.) Defendant Wargo French contends that "contrary to Sparrow's characterization, however, the tolling agreement actually stated that Wargo French's agreement to toll the time period for filing a malicious prosecution cause of action was expressly given 'in consideration for Sparrow's election not to commence an action against WF at this time, and not to commence any such action without first terminating this Tolling Agreement by providing the notice required herein,' and with the 'understanding that Sparrow will rely on the provisions of this Tolling Agreement in forbearing from commencing an action against WF during the time that this Tolling Agreement is in effect.'" (Id. at p. 11:14-21, citing Williams Decl., Ex. 16 at ¶ 1.) Defendant Wargo argues that "Sparrow never sought to terminate the tolling agreement" and "Sparrow's act of filing suit against Wargo French on January 29, 2021 clearly violated its forbearance agreement." (Id. at p. 11:23-25, citing Williams Decl., ¶ 25.)


In opposition, Plaintiff argues that "the tolling agreement expressly defeats the statute of limitations argument." (Opp., p. 21:6.) Plaintiff asserts that "WF, however, claims the tolling agreement is not enforceable because Sparrow filed its lawsuit on January 29, 2021, instead of on February 1, 2021, when the tolling agreement expired." (Id. at p. 26:7-9.) Plaintiff argues that "Defendants' argument has no merit because the tolling agreement, by its own terms, must be interpreted under New York law, and under New York law, filing two days before the expiration of a tolling agreement does not invalidate it." (Id. at p. 26:10-12.) Plaintiff asserts that "in a similar case, a New York supreme court ruled that filing suit four days before expiration of a tolling agreement, even where plaintiff did not comply with the 30-day written notice, did not invalidate a tolling agreement because 'any party to the Tolling Agreement was free to sue

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                    September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**            4:23 PM
**LLP, et al.**


Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

another party after the agreement expired, [and] so by commencing th[e] action four days before the effective termination date of the agreement, plaintiffs committed a breach, albeit a de minimis and immaterial one.'" (Id. at p. 26:12-18, citing Nomura Asset Capital Corp. v. Cadwalader (Sup. Ct. N.Y. Co. Apr. 28, 2009) 889 N.Y.S.2d 506.)


In reply, Defendant Wargo French argues that "Sparrow essentially asks this Court to find that it can ignore its sole obligations under the tolling agreement at will, but still reap the benefits of Wargo French's tolling of the statute of limitations." (Wargo Reply, p. 10:14-15.) Defendant Wargo French asserts that Nomura does not support Plaintiff's argument because Nomura "does not indicate whether the sole consideration for the tolling agreement was an agreement to delay bringing suit." (Id. at p. 10:16-17.) Defendant Wargo French argues that "the sole consideration for the tolling agreement provided by Sparrow was its agreement to not file suit while the agreement was in place without providing thirty days' notice." (Id. at p. 10:17-19.) Defendant Wargo French argues that "the breach of the sole consideration of a contract cannot be considered de minimis." (Id. at p 10:19-20.)


Under both California and New York law, the statute of limitations for a malicious prosecution claim against an attorney is one year from the discovery of the facts constituting the wrongful act or omission, which occurs at latest upon the termination of the prior civil action. (Code Civ. Proc., § 340.6; Vafi v. McCloskey (2011) 193 Cal.App.4th 874, 880; N.Y.C.P.L.R. § 215(3); Williams v. CVS Pharmacy, Inc. (N.Y. App. 2015) 126 A.D.3d 890, 891; Goettler v. Peters (N.Y. App. 1996) 225 A.D.2d 660, 663.)


In the Complaint, Plaintiff alleges that the Sparrow I lawsuit ended on November 7, 2018 and alleges that it suffered damages "following the filing of the Lawsuit" on October 4, 2017." (Complaint, ¶¶ 55, 57.) Plaintiff also alleges that its revenues in 2018 were "down by 60% as a result of the Lawsuit" and that "despite generating a 26% return in 2017 . . . [it] attracted 65% fewer prospective investors in the year following the filing of the Lawsuit compared to the six months prior." (Id. at ¶¶ 58-60.) Based on Defendants' actions with the lawsuit, Plaintiff alleges that it was out of business by 2018. (Id. at ¶ 65.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 34

21STCV03686                                                September 1, 2021
SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH                        4:23 PM
LLP, et al.

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

Based on the allegations in the Complaint, the Court finds that Plaintiff's malicious prosecution claim is barred by the statute of limitations because the allegations demonstrate that Plaintiff's claims accrued in late 2018 (Complaint, ¶ 65), but Plaintiff did not file this complaint until January 29, 2021. Therefore, the malicious prosecution claim is barred by the statute of limitations.

The Court also finds that Plaintiff has not demonstrated that its claim for malicious prosecution is saved by the tolling agreement between the parties.

In the Complaint, Plaintiff alleges that "Sparrow, Sheppard Mullin and Wargo French executed tolling agreements dated September 27, 2019, March 19, 2020 and September 30, 2020 tolling the limitation period of Sparrow's claims and causes of actions in this action until February 1, 2021." (Complaint, ¶ 66.)

The third tolling agreement was entered into on September 30, 2020 by Plaintiff and Defendant Wargo French. (Williams Decl., Ex. 16.) This agreement provides that "in consideration for Sparrow's election not to commence an action against WF at this time, and not to commence any such action without first terminating this Tolling Agreement by providing the notice required herein, and with the understanding that Sparrow will rely on the provisions of this Tolling Agreement in forbearing from commencing an action against WF during the time that this Tolling Agreement is in effect, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree" that "1. Commencing on the Effective Date of this Tolling Agreement, regardless of the date that this Tolling Agreement is signed by the Parties, any statute(s) of limitations or repose, or equitable doctrines such as laches that may be applicable to Sparrow's Claim shall be tolled and remain continuously thereafter tolled until the earlier of either (i) February 1, 2021 or (ii) the termination of this Tolling Agreement as set forth below." (Williams Decl., Ex. 16, p. 1.)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Stanley Mosk Courthouse, Department 34

| | |
|---|---|
| **21STCV03686** | September 1, 2021 |
| **SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH LLP, et al.** | 4:23 PM |

| | |
|---|---|
| Judge: Honorable Michael P. Linfield | CSR: None |
| Judicial Assistant: R. Navarro | ERM: None |
| Courtroom Assistant: None | Deputy Sheriff: None |

Plaintiff does not provide any evidence to dispute that it "did not give Wargo French any notice that it intended to terminate any of the Tolling Agreements at any time." (Williams Decl., ¶ 22.) Plaintiff also does not provide any evidence to dispute that it filed this action before the February 1, 2021. (Williams Decl., ¶ 24; Ex. 17.)

Further, the Court finds that the Nomura case does not support Plaintiff's position that its conduct did not invalidate the Tolling Agreement. First, the Court notes that Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP (2019) 889 N.Y.S.2d 506 is an unreported disposition and the decision of the Supreme Court, New York County, New York, is referenced in a table in the New York Supplement. The Court notes that in New York, the trial courts are referred to as the Supreme Court; in other words, this is an unreported trial court decision that is not binding at all on this Court. The Court also notes that this case has apparently only been cited by two other cases, both of which were trial court decisions; in one of these other cases, Nomura was only mentioned in passing. (See Theranos, Inc. v. McDermott Will & Emery LLP, 2013 WL 11308240, at *12 (D.C.Super.) ["Some jurisdictions have found early-filing tolling agreement breaches are immaterial. See Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP, 889 N.Y.S.2d 506 (N.Y.Sup.Ct. 2009) (finding breach immaterial when complaint filed four days before tolling agreement expired). Others have dismissed filings that acted as a breach to a tolling agreement. See Continental Carbon Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 2010 WL 4259795 (W.D.Okla. 2010) (dismissing complaint when tolling agreement was breached by one day)."])

Nomura, of course, is not binding on this Court. (Budrow v. Dave & Buster's of California (2009) 171 Cal.App.4th 875, 885; Bolanos v. Superior Court (2008) 169 Cal.App.4th 744, 761 ["A written trial court ruling in another case has no precedential value."]). Based upon the oral argument of counsel, it appears that Nomura, a decision of a New York trial court, does not even have precedential value in New York.

Even assuming that Plaintiff cited Nomura simply for its persuasive value, it is not very persuasive. In Nomura, "the Tolling Agreement provided that any party to it 'may end this

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                    September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                        4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield            CSR: None
Judicial Assistant: R. Navarro                  ERM: None
Courtroom Assistant: None                       Deputy Sheriff: None

===

Tolling Agreement, in advance of its designated termination date, by giving at least 30 days prior written notice of its intent to do so'" and the defendant did "not dispute that plaintiffs gave Cadwalader notice by letter dated September 29, 2006 that they were terminating the Tolling Agreement effective October 31, 2006." (Id. at *9.) In Nomura, "the issue thus pertains to plaintiffs alleged breach of the Tolling Agreement by commencing this action four days prior to that date, on October 27, 2006." (Ibid.)


In Nomura, the court explained that "[a] material breach of contract may discharge the non-breaching party from further performance of its obligations under the contract." (Id. at p. *10.) The court held that:


"Here, however, any party to the Tolling Agreement was free to sue another party after the agreement expired, so by commencing this action four days before the effective termination date of the agreement, plaintiffs committed a breach, albeit a de minimis and immaterial one. There is no indication that plaintiffs commenced this action prematurely in order to gain an undue advantage or that Cadwalader suffered any injury or prejudice as a result of the early commencement. The Tolling Agreement also did not contain a provision that an action commenced in violation or breach of the agreement should be dismissed (cf. OneBeacon Am. Ins. Co. v. NL Indus., Inc., 43 AD3d 716, 717–718 [1st Dept 2007] ). In the absence of any such circumstances, Cadwalader has failed to establish that plaintiffs should not be permitted to invoke the benefit of the Tolling Agreement." (Ibid.)


First, the Court notes that unlike in Nomura, Plaintiff here did not provide for the requisite notice as set forth in Tolling Agreement before filing this suit. Second, the Court finds that court in Nomura did not address the scenario when the sole consideration for the tolling agreement was an agreement to delay bringing suit and whether the breach of the sole consideration of the agreement would be considered de minimis. Here, the Tolling Agreement specifically provides that the sole consideration for Sparrow's election to not commence an action against Defendant Wargo French was that the statute of limitations would be tolled until the earlier of either (i) February 1, 2021 or (ii) the termination of this Tolling Agreement. (Williams Decl., Ex. 16, p. 1.) Therefore, Plaintiff's breach of the tolling agreement here was not de minimis like in Nomura.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                     September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                     4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

The Court finds that Plaintiff's malicious prosecution claim is barred by applicable the statute of limitations and that the Tolling Agreement does not save Plaintiff's malicious prosecution claim. Plaintiff has failed to demonstrate a probability of prevailing on its malicious prosecution claim against Defendant Wargo French. (Equilon Enterprises, supra, at p. 67; Code Civ. Proc., § 425.16(b)(1).)

The Court GRANTS Defendant Wargo French's anti-SLAPP motion.

b. Plaintiff's Does Not Show It Will Prevail On Its Claim Against Defendant Sheppard Mullin

Actions brought against an attorney cannot proceed if the attorney cannot defend himself due to a client's refusal to waive the attorney-client privilege because the attorney cannot disclose the client's confidences. (See McDermott, Will & Emery v. Superior Ct. (2000) 83 Cal. App. 4th 378, 385; see also Solin v. O'Melveny & Meyers, LLP (2001) 89 Cal.App.4th 451, 458.) In McDermott, the shareholders attempted to maintain a derivative action for malpractice on behalf of a corporation against the corporation's in house counsel, but the corporation, not the shareholders, held the privilege and refused to waive it for the derivative action. (McDermott, Will & Emery, supra, 83 Cal. App. 4th at pp. 380-385.) The court explained that it "simply cannot conceive how an attorney is to mount a defense in a shareholder derivative action alleging a breach of duty to the corporate client, where, by the very nature of such an action, the attorney is foreclosed, in the absence of any waiver by the corporation, from disclosing the very communications which are alleged to constitute a breach of that duty." (Id. at p. 385.) The court held that dismissal of the action was appropriate because the "attorneys would be unable to defend such actions in the absence of a waiver of the privilege by their own client." (Ibid.)

Defendant Sheppard Mullin also argues that Plaintiff's claim "is barred as matter of law because Sheppard Mullin cannot defend itself without reliance on privileged communications, and

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                              September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**              4:23 PM
**LLP, et al.**


Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

---

MiMedx and BofI have refused to waive the privilege." (Sheppard Mullin Motion, p. 16:10-12.) Defendant Sheppard Mullin explains that "the analysis in a malicious prosecution case is whether or not Sheppard Mullin, the defendant, initiated the prior suit without probable cause and with malice." (Id. at p. 17:18-19.) Defendant Sheppard Mullin asserts that it "is in possession of evidence that demonstrates that it had more than sufficient probable cause to initiate the Underlying Litigation and that it did so in good faith" but "because of the attorney-client privilege, Sheppard Mullin cannot present that evidence." (Id. at p. 17:19-22.) Therefore, Defendant Sheppard Mullin argues, "the Complaint must be dismissed." (Id. at p. 18:2.)


In opposition, Plaintiff argues that "Defendants cannot hide behind privilege because they already disclosed their basis for suing Sparrow." (Opp., p. 23:5-6.) Plaintiff asserts that "MiMedx has either waived privilege or never even argued that its prefiling investigation was privileged in the first place." (Id. at p. 23:8-9.) Plaintiff maintains that "MiMedx has already disclosed the entire basis for its decision to sue Sparrow; it has already disclosed the steps it took and the investigators it hired and the conclusions they reached; and it has already produced all correspondence related to their factual investigation into Aurelius' identity on MiMedx's behalf." (Id. at p. 23:9-12.)


In reply, Defendant Sheppard Mullin asserts that "while MiMedx waived the work product/attorney-client privilege as to some evidence, BofI has not." (Sheppard Mullin Reply, p. 7:21-23, citing Towill Decl., ¶ 5.) Defendant Sheppard Mullin argues that "Sparrow addressed this argument only as it relates to MiMedx, and has not argued that BofI has waived the attorney-client privilege." (Id. at pp. 7:23-8:1.)


The Court finds that Plaintiff has failed to provide evidence to show that BofI has waived its attorney-client privilege and failed to dispute that there is material subject to the attorney-client privilege between Sheppard Mullin and BofI that would materially change its defense. (See Towill Decl., ¶ 5.) Because it is undisputed that Defendant Sheppard Mullin cannot fully defend itself as a result of BofI's refusal to waive the privilege, Plaintiff's malicious prosecution claim would be dismissed. Overall, Plaintiff has failed to demonstrate a probability of prevailing on its malicious prosecution claim against Defendant Sheppard Mullin. (Equilon Enterprises, supra, at

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 34

**21STCV03686**                                                September 1, 2021
**SPARROW FUND MANAGEMENT, LP vs WARGO FRENCH**                              4:23 PM
**LLP, et al.**

Judge: Honorable Michael P. Linfield          CSR: None
Judicial Assistant: R. Navarro                ERM: None
Courtroom Assistant: None                     Deputy Sheriff: None

p. 67; Code Civ. Proc., § 425.16(b)(1).)

The Court GRANTS Defendant Sheppard Mullin's anti-SLAPP motion.

E. Conclusion

The Court GRANTS both anti-SLAPP motions.

The Court sets an OSC re Dismissal for October 12, 2021. Any motions for attorney's fees or costs for the anit-SLAPP motions must be heard prior to the OSC re Dismissal.

Defendants to prepare the judgment.

The Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) filed by Mullin Richter Hampton LLP on 06/25/2021 and Special Motion to Strike under CCP Section 425.16 (Anti-SLAPP motion) filed by Wargo French LLP on 07/07/2021 are Granted.

On the Court's own motion, the Jury Trial (7 day estimate) scheduled for 04/04/2022, and Final Status Conference scheduled for 03/25/2022 are vacated .

Order to Show Cause Re: Dismissal is scheduled for 10/12/21 at 08:30 AM in Department 34 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.



INFINITY LAW GROUP LLP
1020 AILEEN STREET
LAFAYTTE, CALIFORNIA 94549

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT 8</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SPARROW FUND MANAGEMENT LP,

                                        Plaintiff,

                        -against-

MIMEDX GROUP, INC.,

                                        Defendant.

------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 5/13/2021

**OPINION & ORDER ON MOTION
TO COMPEL PRODUCTION OF
DOCUMENTS WITHELD ON
PRIVILEGE GROUNDS**

**18-cv-4921 (PGG) (KHP)**

    Plaintiff Sparrow Fund Management, LP ("Sparrow") brings this action against Defendant

MiMedx Group, Inc. ("MiMedx") for defamation and malicious prosecution.  Sparrow's claims

arise out of an earlier suit filed against it by MiMedx in which MiMedx claimed that Sparrow or

its principles were making defamatory statements about MiMedx via anonymous blog posts

authored under the pseudonym Aurelius Value.  *See MiMedx Group, Inc. v. Sparrow Fund

Mgmt., LP*, 1:17-cv-07568 (PGG) (KHP) (S.D.N.Y. 2017).  The Aurelius blog posts claimed that

MiMedx was engaging in fraud and that its sales figures were inaccurate.  MiMedx claimed that

the posts were false and defamatory and the work of short sellers trying to illegally manipulate

the market.  As it turns out, MiMedx's former Chief Operating Officer and Chief Executive

Officer were found guilty after trial of using "secret agreements and corrupt financial

inducements to materially misstate quarterly and annual sales revenue of MiMedx."[1]

---

[1] *See* DEPARTMENT OF JUSTICE, https://www.justice.gov/usao-sdny/pr/former-coo-publicly-traded-biopharmaceutical-company-sentenced-accounting-fraud (last visited May 12, 2021).

Sparrow maintained from the outset of the earlier case that it was not Aurelius and that MiMedx did not have a good faith basis for suing Sparrow in the first place. It asserts that when it provided information to MiMedx to demonstrate that it was not Aurelius, MiMedx nonetheless continued the litigation in bad faith. According to Sparrow, MiMedx's conduct forced Sparrow out of business.

A key focus of discovery in this case has been the factual basis for MiMedx filing suit against Sparrow back on October 4, 2017. That is, why did MiMedx think that Sparrow was Aurelius and why did it not drop its suit against Sparrow after Sparrow provided affidavits and other information to demonstrate that it was not Aurelius? MiMedx's counsel in the earlier case advised that it had conducted investigations with the assistance of the Mintz Group and a forensic linguistic expert and had relied on the results of those investigations in concluding that it had a credible basis for believing Sparrow was Aurelius. MiMedx also became privy to an investigation conducted by Kasowitz Benson Torres LLP (the "Kasowitz Firm") that concluded principals of Sparrow were likely behind the Aurelius postings.

MiMedx initially asserted that its pre-suit investigation was privileged. Since then, it has produced documents pertaining to the investigation but has withheld other communications about the pre-suit investigation on the grounds of privilege. Sparrow challenges MiMedx's assertions of privilege and now moves to compel production of the purportedly privileged documents on the grounds that MiMedx has waived privilege pursuant to the "at issue" or "selective disclosure" doctrines and that the withheld documents are subject to production pursuant to the crime-fraud exception to privilege. (ECF No. 183.) The Court's ruling on the motion to compel is set forth below.

## APPLICABLE LAW

**1.  The Attorney-Client Privilege and Work Product Doctrine**

In diversity cases such as this, where state law governs the claims, the Court looks to

state law for determining privilege.  *E.g.*, *AIU Ins. Co. v. TIG Ins. Co.*, No. 07-cv-7052 (SHS) (HBP),

2008 WL 4067437, at *5 (S.D.N.Y. Aug. 28, 2008) (citations omitted) (applying New York

law), *modified on reconsideration,* No. 07-cv-7052 (SHS) (HBP), 2009 WL 1953039 (S.D.N.Y. July

8, 2009); *see also* Fed. R. Evid. 501.  The parties agree that New York law governs.  "The

elements of the attorney-client privilege under New York law are the existence of an attorney-

client relationship, a communication made within the context of that relationship for the

purpose of obtaining legal advice, and the intended and actual confidentiality of that

communication."  *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y.

1995) (citing *People v. Osorio,* 75 N.Y.2d 80, 82–84 (1989)).  Although the privilege was

designed to promote full and frank communications between a client and counsel, and thereby

"promote broader public interests in the observance of law and administration of justice," it is

narrowly construed because the application of the privilege renders protected relevant

information undiscoverable.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also*

*Hoopes v. Carota*, 142 A.D.2d 906, 908-09, 531 N.Y.S.2d 407, 409 (3d Dep't 1988) (explaining

that the attorney-client privilege "constitutes an obstacle to the truth-finding process" and,

thus, its "invocation should be cautiously observed to ensure that its application is consistent

with its purpose") (internal quotation marks, alterations, and citations omitted), *aff'd,* 74 N.Y.2d

716, 543 N.E.2d 73 (1989).

"Unlike the attorney-client privilege, the work product protection in diversity cases is governed by federal law." *Bowne of New York City, Inc.*, 161 F.R.D. at 264 (citing *Fine v. Facet Aerospace Prods. Co.,* 133 F.R.D. 439, 444–45 (S.D.N.Y. 1990)). The work product doctrine protects documents and tangible things prepared by a party or their attorney in anticipation of litigation. Fed. R. Civ. P. 26(b)(3); *see also Pearlstein v. Blackberry Ltd.*, No. 13-cv-7060 (CM) (KHP), 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019). The crucial factor courts should consider when determining whether the work product doctrine applies to particular documents or materials is whether they were prepared with "'with an eye toward' or 'in anticipation of' or 'because of the prospect of litigation.'" *Pearlstein*, 2019 WL 1259382, at *5 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)); *see also Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010) ("[t]he mere possibility of litigation is insufficient to obtain work-product protection." (internal quotation marks and citation omitted)).

The party asserting the privilege or work product protection bears the burden of showing that either doctrine applies. *See, e.g.*, *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)); *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224–25 (2d Cir. 1984); *Priest v. Hennessy*, 51 N.Y.2d 62, 69, 409 N.E.2d 983, 986 (1980); *Hoopes*, 142 A.D.2d at 910, 531 N.Y.S.2d at 410.

### 2. Waivers of Privilege

In addition to bearing the burden of establishing privilege or work product protection, the party asserting such protections bears the burden of showing that privilege was not waived.

*Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377, 581 N.E.2d 1055, 1059; *Hoopes*, 142 A.D.2d at 909, 531 N.Y.S.2d at 409; *see also, e.g.*, *Pearlstein*, 2019 WL 1259382, at *6.

Both attorney-client privilege and work product protection can be waived by the "at issue" waiver doctrine or by "selective waiver." That is, when the privileged communications are placed "at issue" in the litigation and a party asserts reliance on counsel as a defense to justify its actions, a party waives privilege and/or work product protection. *See Windsor Secs., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 519-20 (S.D.N.Y. 2017) (denying request for disclosure of communications protected by attorney-client privilege where those communications would not be used as evidence). Courts will find that privileged/protected communications were put at issue where "[i]t would be unfair for a party who has asserted facts that place privileged communications at issue to deprive the opposing party of the means to test those factual assertions through discovery of those communications." *Id*. at 518; *see also In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("a party must *rely* on privileged advice from his counsel to make his claim or defense") (emphasis in original); *Pearlstein*, 2019 WL 1259382, at *7 (collecting cases);[2] *Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 43 A.D.3d 56, 64, 837 N.Y.S.2d 15, 23 (1st Dep't 2007) (if the mere relevance of privileged communications to the parties' dispute could trigger at-issue waiver, the "[attorney-client] privilege would have little effect") (citing *Long Is. Lighting Co. v. Allianz Underwriters Ins. Co.,* 301 A.D.2d 23, 33, 749 N.Y.S.2d 488 (1st Dep't 2002)). "Merely pleading a claim or defense does not operate as a waiver of all protected information relevant to the claim or defense—unless the party asserting

---

[2] "The law in New York concerning the at-issue waiver theory parallels federal law." *Windsor Sec., LLC*, 273 F. Supp. 3d at 518 n.2 (cleaned up).

the privilege *relies*, to some extent, on the protected information to advance that claim or

defense." *Abromavage v. Deutsche Bank Secs. Ins.*, No. 18-cv-6621 (VEC), 2019 WL 6790513, at

*2 (S.D.N.Y. Dec. 11, 2019).

Attorney-client privilege can be waived when a party selectively produces privileged

information that is beneficial to its case while withholding related privileged information that is

damaging. *Tri-Links*, 43 A.D.3d at 64, 837 N.Y.S.2d at 23 (citing *Orco Bank v. Proteinas Del

Pacifico,* 179 A.D.2d 390, 577 N.Y.S.2d 841 (1st Dep't 1992)); *Village Bd. of Village of

Pleasantville v. Rattner*, 130 A.D.2d 654, 655, 515 N.Y.S. 2d 585 (2d Dep't 1987). The logic

behind this rule is that parties should not be allowed to engage in gamesmanship that uses the

attorney-client privilege as both a shield and a sword. *Pearlstein*, 2019 WL 1259382, at *7.

### 3. Crime-Fraud Exception to Privilege and Work Product

Finally, no protections are afforded to any privileged communications or work product

made in furtherance of a crime or fraud. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995);[3]

*In re New York City Asbestos Litig.*, 109 A.D.3d 7, 10, 966 N.Y.S.2d 420, 422 (1st Dep't 2013). It

is well established that "'[a] client who consults an attorney for advice that will serve him in the

commission of a fraud will have no help from the law.'" *Amusement Indus.*, 293 F.R.D. at 425

(quoting *Clark v. United States,* 289 U.S. 1, 15 (1933)). However, for the crime-fraud exception

to apply, the particular communications sought must have been made in furtherance of a

---

[3] Because the same legal standards apply under the New York and federal crime-fraud doctrines, courts deciding whether the crime-fraud doctrine applies under New York law may rely on both New York and federal law. *E.g.*, *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 425 (S.D.N.Y. 2013).

crime, fraud, or "an intentional tort that undermines the adversary system itself."[4]  *Madanes v. Madanes*, 199 F.R.D. 135, 149 (S.D.N.Y. 2001).

The party seeking disclosure of protected information pursuant to the crime-fraud exception bears the burden of demonstrating that probable cause exists to believe that a crime or fraud has been attempted or committed and that the privileged communications furthered such crime or fraud.  *E.g.*, *Pearlstein*, 2019 WL 1259382, at *9; *In re New York City Asbestos Litig.*, 109 A.D.3d at 10, 966 N.Y.S.2d at 422.  Here, probable cause "requires that a 'prudent person' have a 'reasonable basis' for believing that the objective of the client's communication with the attorney was to further a fraudulent scheme." *Amusement Indus.*, 293 F.R.D. at 426–27 (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1039 (2d Cir. 1984) then citing *In re Fresh Del Monte Pineapple,* No. 04-MD-1628 (RMB) (MHD), 2007 WL 64189, at *3 (S.D.N.Y. Jan. 4, 2007)), *aff'd,* 407 Fed. App'x 520 (2d Cir. 2010)); *see also Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 242 F.R.D. 248, 250 (S.D.N.Y. 2007) (crime-fraud exception applied to email defendant's mother sent an attorney asking him to alter and backdate board minutes to show that a certain individual was an authorized signatory for contracts).  Courts examining documents *in camera* have the discretion to determine whether the crime-fraud exception applies.  *See, e.g.*, *Pearlstein*, 2019 WL 1259382, at *9 (crime-fraud privilege did not apply where the documents submitted *in camera* failed to demonstrate a "substantial possibility that a fraud was committed or that Defendants used the communications with counsel to commit a crime or fraud").

---

[4] Under New York law, malicious prosecution is an intentional tort.  *Bittner v. Cummings*, 188 A.D.2d 504, 506 (2d Dep't 1992).

7

## DISCUSSION

Sparrow challenges the following categories of documents contained on MiMedx's privilege log:

- Documents related to the pre-filing investigation of the prior litigation that supported filing suit;
- Documents related to the post-filing investigation that supported the continuation of the prior litigation;
- Documents and communications related to affidavits that Sparrow provided in October 2017 to demonstrate that it was not Aurelius;
- Documents and communications related to an April 2018 letter that Sparrow sent to MiMedx asking it to drop the prior suit;
- Correspondence pertaining to MiMedx's retention of Seward & Kissell LLP and potential conflicts due to the fact that the firm also was representing Sparrow;
- Documents related to a 2016 internal investigation of MiMedx employees by MiMedx management focused on potential employee wrongdoing/whistleblowing dubbed "Project Snow White"; and
- The report issued by MiMedx's Audit Committee after an investigation of its former CEO's fraud that led to his termination.

Sparrow has selected certain documents from MiMedx's privilege log that fall within the above categories as samples for the Court's *in camera* review. The Court also has a copy of MiMedx's privilege log.

1. **Waiver**

Sparrow asserts that MiMedx put advice of counsel at issue by relying on counsel's investigation of Sparrow as a defense in this action. Sparrow also asserts that MiMedx has selectively disclosed some documents pertaining to its pre and post-suit investigations about whether Sparrow was Aurelius and that MiMedx, in fairness, must disclose all documents pertaining to those investigations.

MiMedx claims that it produced documents generated by the investigators as well as communications about the process of the investigation and investigation results, whether

generated by counsel or not. On the other hand, MiMedx admits to withholding attorney-client communications discussing the investigation in the context of forming a litigation strategy and providing legal advice. In other words, MiMedx argues it is not relying on the advice of counsel as part of its defense, but rather on the results of its investigations. Further, Mimedx maintains that it has not selectively disclosed documents from the investigation that are helpful and hidden documents that are unhelpful. In fact, it has produced some reports suggesting that there was no basis to believe that Sparrow was Aurelius and others suggesting the opposite.

To start, MiMedx has clearly waived privilege as it relates to all facts its investigators and attorneys collected as part of the pre and post-suit investigations, attorney-client communications relaying those facts, and attorney-client communications drawing factual conclusions based on the facts collected. Indeed, MiMedx acknowledges this waiver and has produced the entirety of its pre-filing investigation to Sparrow. MiMedx argues, however, that the selective waiver doctrine does not act as a waiver of privilege for attorney-client communications created for the purposes of rendering and receiving legal advice as to whether and how MiMedx could take and continue legal action against Sparrow based on the investigation results.

In *Pray v. N.Y.C. Ballet Co.*, No. 96-cv-5723 (RLC), 1998 WL 558796 (S.D.N.Y. Feb. 11, 1998), the Court made the same distinction MiMedx advances here in determining what had to be produced and what did not have to be produced. The plaintiff in *Pray* asserted a claim of sexual harassment. In its defense, her employer stated that it had conducted an internal investigation into the plaintiff's claims and based its remedial action on the results of the investigation. The investigation was conducted by lawyers. Lawyers from the same firm

provided legal advice, based on the results of the investigation, about appropriate remedial action under the law as well as litigation advice in defending the action. Because the issue was not the sufficiency of the advice given or followed, but rather whether the investigation itself and the employer's actions based on the results of the investigation were appropriate, the Court did not compel production of attorney-client communications providing legal advice about how to act based on the results of the investigation and how to defend the lawsuit. *See also Stoner v. N.Y.C. Ballet Co*., No. 99-cv-0196 (BSJ) (MHD), 2003 WL 749893, at *2 (S.D.N.Y. Mar. 3, 2003). MiMedx relies on *Pray* to claim it has not waived privilege or put reliance on advice of counsel at issue.

However, in some cases, even when a party asserts that it has not relied on advice of counsel, such advice may have been impliedly placed in issue where the party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a defense. *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09-cv-8083 (GBD) (THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010). For example, in *Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012), the court held it would be unfair for a party asserting good faith to rely on privilege to deprive its adversary of access to material that might disprove or undermine that assertion. Fairness is the guidepost for courts when assessing, based on the facts of the case, whether a party has impliedly put advice of counsel at issue and waived privilege. *Leviton Mfg. Co.*, 2010 WL 4983183, at *3. While Sparrow seemingly agrees that MiMedx has not explicitly relied on the legal advice of counsel thus far in the litigation, Sparrow contends that MiMedx's assertion of a "good faith" defense to the malicious prosecution claim impliedly places privileged communications about litigation strategy at issue.

Despite these seemingly countervailing authorities, the Second Circuit has not squarely addressed the degree of reliance necessary to trigger an at-issue waiver of otherwise privileged material. *See In re County of Erie*, 546 F.3d at 229 ("[w]e decline to specify or speculate as to what degree of reliance is required"). Accordingly, the Court must determine, based on the facts of *this* case, whether MiMedx's reliance on the investigation reports and/or its assertion of good faith ought to render related attorney-client communications concerning litigation strategy discoverable.

Other judges in this District have wrestled with the same question (although not in the context of a malicious prosecution claim) and have concluded that, based on the prevailing case law, a party's assertion only triggers an at-issue waiver when it pertains to a claim or defense to which the party making the assertion has the burden of proof. *See, e.g.*, *Discover Fin. Servs. v. Visa U.S.A., Inc.*, No. 04-cv-7844 (BSJ) (DFE), 2006 WL 2807187, at *3 (S.D.N.Y. Sept. 27, 2006). For instance, when a plaintiff files a claim and an element of that claim requires an assessment of privileged materials, the plaintiff's privilege protection will be waived. *Century 21, Inc. v. Diamond State Ins. Co.*, No. 03-cv-5163 (GEL), 2006 WL 2355323, at *2-3 (S.D.N.Y. Aug. 10, 2006). Similarly, where parties assert affirmative defenses they bear the burden of proving, courts have found that the attorney-client privilege should be waived when the only means by which an opposing party can fully assess the factual assertions surrounding the affirmative defense is to review privileged materials. *Pereira v. United Jersey Bank*, No. 94-cv-1565 (LAP), 1997 WL 773716, at *6 (S.D.N.Y. Dec. 11, 1997) (setoff defense to preferential transfer claim); *Weizmann Inst. of Sci. v. Neschis*, No. 00-cv-7850 (RMB) (THK), 2004 WL 540480, at *6 (S.D.N.Y. Mar. 17, 2004) (compulsion defense to collateral estoppel claim). This Court agrees with this

approach.  Therefore, this Court will assess whether the good faith defense asserted by MiMedx amounts to a mere denial of Sparrow's malicious prosecution claim or an affirmative defense for which MiMedx bears the burden of proof.

The elements of a malicious prosecution claim are: (1) the defendant commenced or continued a prior action against the plaintiff; (2) the prior proceeding terminated in the plaintiff's favor; (3) defendant commenced the prior action against the plaintiff despite an absence of probable cause; and (4) the defendant acted with actual malice.  *See Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 613, 23 N.Y.S.3d 173 (1st Dep't 2015) (quoting *Broughton v. State*, 37 N.Y.2d 451, 457, 335 N.E.2d 310 (1975)).  In civil actions, the lack of probable cause must be "patent."  *Facebook*, 134 A.D.3d at 614 (citation omitted); *see also Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 290 (E.D.N.Y. 2014) ("'[b]ecause obviously less in the way of grounds of belief will be required to justify a reasonable man in bringing a civil rather than a criminal suit, when the underlying action is civil in nature, the want of probable cause must be patent.'") (quoting *Butler v. Ratner,* 210 A.D.2d 691, 619 N.Y.S.2d 871, 873 (3d Dep't 1994)).  Where more than one reasonable inference may be drawn from the facts, the question of probable cause is a jury question.  *Parkin v. Cornell Univ., Inc.*, 78 N.Y.2d 523, 529, 583 N.E.2d 939, 942 (1991).  Further, malice is shown by demonstrating that the underlying litigation was commenced for "improper or wrongful motives, or in reckless disregard of the rights of the plaintiff."  *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (internal quotation marks and citation omitted).  Because lack of probable cause and malice are overlapping issues, "[a] lack of probable cause generally creates an inference of malice" and, where there is an issue of fact

regarding probable cause, there will also be an issue of fact with respect to malice. *Liberty Synergistics, Inc.*, 50 F. Supp. 3d at 292 (citation omitted).

Given the dearth of case law assessing the "good faith" defense in isolation in the context of common law malicious prosecution claims, the Court looks to malicious prosecution cases arising under Section 1983 of Title 42 of the United States Code for guidance. *Cf. Ahearn v. Brachowicz*, No. 13-cv-8007 (SAS), 2014 WL 3408389, at *4 (S.D.N.Y. July 10, 2014) (explaining that the same elements comprise malicious prosecution claims under section 1983 and state law). Those cases strongly indicate that, because a plaintiff alleging malicious prosecution under New York law must prove a lack of probable cause, "the good faith and belief of a malicious prosecution defendant is of paramount importance." *Neulist v. County of Nassau*, 437 N.Y.S.2d 239, 245 (Sup. Ct. N.Y. 1981).

In *Neulist*, the plaintiff filed two parallel malicious prosecution actions against the County of Nassau and other prosecutor defendants: one under the common law in New York state Court and another under Section 1983 in the Eastern District of New York. First, in the federal case, the Hon. Jacob Mishler dismissed the plaintiff's complaint because the plaintiff failed to plead facts sufficient to demonstrate a lack of good faith on the part of the police. Based on Judge Mishler's finding that the plaintiff could not show a lack of good faith on the part of the police officers, the state court subsequently found that the "plaintiff has not shown that there was an absence of probable cause for the [prior] criminal proceeding or that the defendants were actuated by malice." *Neulist*, 437 N.Y.S.2d at 245. Thus, the New York court held that, to make out his common law malicious prosecution claim, plaintiff was required to prove a lack of good faith on the part of the defendants. The Court explained that Judge

Mishler's finding with respect to good faith was a "necessary . . . determination" in adjudicating the malicious prosecution claim.  *Id.*

Based on this rationale, I find that Sparrow impliedly raised the issue of whether MiMedx acted in good faith by asserting a claim of malicious prosecution.  While MiMedx asserts, among other defenses, that it did not act with malice or bad faith, that defense is necessitated by the malicious prosecution claim itself.  It is difficult to imagine any party contesting an allegation of malice – one of the core elements of a malicious prosecution claim under New York law – without contending that it acted in good faith.  Therefore, and in light of the case law discussed above, I find that MiMedx's assertion of good faith did not impliedly put otherwise privileged communications concerning litigation strategy based on the results of the pre and post-filing investigations at issue.

To the extent the pre-filing investigation documents or the affidavits provided by Sparrow in the prior action show a patent lack of probable cause, then what counsel advised or didn't advise is of no moment.  In such a scenario, Sparrow would be able to prosecute its case and MiMedx would be precluded from defending itself based on the withheld privileged communications.  The investigation reports, the facts MiMedx's investigators and attorneys collected as part of the investigations, and the communications relaying those facts and related factual conclusions will speak for themselves.  Based on the particular circumstances of this case, fairness dictates that MiMedx disclose all such documents but that it need not disclose privileged communications discussing litigation strategy based on the results of the investigations.

That MiMedx may have previously taken the position that the investigation was protected from disclosure based on the attorney-client privilege or work product privilege in the prior defamation suit against Sparrow does not change the analysis. That case was resolved on a motion to dismiss and the issue of waiver was never briefed or decided in that case. In this case, as already stated, MiMedx has waived privilege as to the substance of the investigation and has already produced documents from it. Accordingly, MiMedx has not put good faith at issue or selectively disclosed documents such that the attorney-client privilege should be vitiated.

**2. Crime-Fraud Exception**

This case involves claims of defamation and malicious prosecution against Sparrow. MiMedx is not accused of committing any crime or fraud against Sparrow. Sparrow posits that MiMedx's management, at the time of the earlier litigation, was engaging in a cover-up of fraud for which its former CEO and COO were convicted, and that its attempts to stop Aurelius's blogging about suspected fraud was part of that cover-up. For this reason, Sparrow contends that the crime-fraud exception applies. The major flaw in Sparrow's argument is that it has no factual support for the contention that the privileged communications at issue furthered a crime, fraud, or intentional tort that undermines the adversarial system. In other words, while it is true that certain officers at MiMedx were convicted of fraud on the market, that, in itself, does not establish probable cause that MiMedx's defamation suit against Sparrow was malicious or that attorney-client communications related to that suit were made in furtherance of an intentional tort that undermines the adversarial system. *In re General Motors LLC Ignition Switch Litigation*, Nos. 14-MD-2543 (JMF) & 14-MC-2543 (JMF), 2015 WL 7574460 (S.D.N.Y.

15

Nov. 25, 2015).  Further, none of the documents the Court has reviewed *in camera* support

application of this exception to these documents.  Absent a more fulsome basis for asserting

that communications on the privilege log from prior counsel were used to effectuate a crime or

fraud, probable cause has not been established for application of this exception.[5]

### 3. The Sample Documents

Finally, having reviewed the sample documents identified by Sparrow for *in camera*

review, the Court finds that some of the communications at issue contain privileged material

and that others do not.  The Court will assess each document in turn, which should provide

additional guidance to the parties on what should be produced in discovery henceforth.

*MMIG-02514901:*

The majority of this document has already been produced to Sparrow.  There is one

paragraph, however, that MiMedx redacted before producing the email communication.

Having reviewed the redacted paragraph *in camera*, the Court finds that the redacted material

is privileged and, in any event, does not otherwise undermine MiMedx's good faith in

continuing its initial litigation against Sparrow.  Therefore, MiMedx need not disclose the

redacted portion of this email chain.

*MMIG-02517039:*

According to the parties, this document has already been disclosed to Sparrow in

unredacted form.

*MMIG-02527726:*

---

[5] While the case law suggests that the crime-fraud exception may extend to certain intentional torts that undermine the adversarial system, *Madanes*, 199 F.R.D. at 149, Plaintiff still has not provided a factual basis for a showing of probable cause that the attorney communications at issue were made in furtherance of such a tort.

This document relates to a conflict issue flagged by the Hon. Deborah A. Batts in connection with the initial litigation and is irrelevant to the instant action. The email chain is also privileged. Accordingly, MiMedx need not produce this communication.

*MMIG-02528961:*

This document includes privileged correspondence between MiMedx personnel and MiMedx's attorneys concerning: (1) the attorneys' analysis of an affidavit from Sparrow's Director of Research claiming that Sparrow is not Aurelius; and (2) MiMedx's investigatory strategy to uncover the identities of the anonymous bloggers by backchanneling with the FBI. Most of the communication is undoubtedly privileged, as it is a confidential communication between attorney and client for the purpose of rendering legal advice with respect to litigation strategy. Other parts of the email chain are irrelevant to the instant action. However, because a limited portion of the email specifically outlines an approach to uncover the identities of the anonymous bloggers, that portion can reasonably be interpreted as an element of MiMedx's post-filing investigation, which, as discussed above, is at issue in this litigation. Thus, while the vast majority of the email can be redacted for privilege, the last two sentences in the last email in the chain (*i.e.*, the 10/21/2017 2:23:57 PM email from Joseph Wargo) should be produced in unredacted form to Sparrow.

*MMIG-02532847:*

According to the parties, this document has already been disclosed to Sparrow in unredacted form.

*MMIG-02683731:*

According to the parties, this document has already been disclosed to Sparrow in unredacted form.

*MMIG-02691037:*

This document does not convey legal advice and, as such, is not privileged. Moreover, to the extent this email chain could be characterized as attorney work product, the email contains factual conclusions relayed to MiMedx by its attorneys based on the results of pre-filing investigations into the identity of Aurelius. As noted above, MiMedx waived privilege and work product protection as it relates to the factual conclusions drawn by counsel based on the results of MiMedx's pre and post-suit investigations. Accordingly, MiMedx must produce this document to Sparrow in unredacted form.

*MMIG-03193923:*

This document does not convey legal advice and, as such, is not privileged. The email merely reports that an unidentified attorney reported having knowledge of Aurelius' identity before MiMedx filed suit against Sparrow. Thus, the email relates to Wargo French's investigation of Aurelius's identity and any applicable work product protection was waived by MiMedx's reliance on those investigations. Therefore, the communication is relevant to the instant action and must be produced in unredacted form.

*MMIG-05757822:*

This email chain contains privileged communications related to a FINRA response letter drafted by MiMedx's in-house attorneys. The email contains legal advice and is not particularly relevant to the instant action. Moreover, it appears that MiMedx already produced the draft

FINRA letter itself (*see* ECF No. 183-5,) which is the much more critical communication.

Accordingly, MiMedx need not produce this communication.

*MMIG-06078859:*

This email chain discusses edits to a draft letter to be sent to Sparrow's counsel concerning Sparrow's allegation that MiMedx and Sheppard Mullin were involved in a social media campaign against Sparrow.  The email clearly involves legal advice and is privileged. Since the contents do not relate to any pre or post-filing investigation into the identity of Aurelius, MiMedx need not produce this communication.

*The Audit Committee Report:*

In February 2018 a subset of MiMedx's Board of Directors commissioned the law firm King & Spalding to conduct an independent investigation regarding allegations of fraud committed by MiMedx's leadership.  The report that resulted from the investigation was not provided to this Court for *in camera* review, but MiMedx alleges that the report is privileged because it memorialized various confidential witness interviews and includes legal advice developed based on the investigators' findings.  Moreover, MiMedx asserts that the report has never been published and has only been shared internally within MiMedx and to outside counsel of those who reviewed the report.

Based on these representations, it appears that the Audit Committee Report was prepared at the direction of MiMedx officers in order to secure legal advice from outside counsel as to liability exposure and potential litigation based on the investigators' findings. Accordingly, to the extent that the audit report records confidential interview responses from MiMedx employees, those portions of the report may very well be privileged.  *Upjohn Co.*, 449

U.S. at 394-96.  That said, the specific facts and circumstances surrounding the audit report are not entirely clear.  MiMedx shall submit this report to the Court for *in camera* review by **May 17, 2021**.

**CONCLUSION**

For the reasons set forth above, Sparrow's motion to compel (ECF No. 183,) is GRANTED in part and DENIED in part.  The parties are hereby ordered to meet and confer on any outstanding issues pertaining to the production of documents based on the Court's guidance provided above.

**SO ORDERED.**

Dated: May 13, 2021
New York, New York

KATHARINE H. PARKER
United States Magistrate Judge